UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULL CIRCLE OF LIVING AND DYING; BONNIE "AKHILA" MURPHY; DONNA PEIZER; PAMELA YAZELL; KAY HOGAN; JANAIA DONALDSON; and ROBIN MALLGREN,<br><br>Plaintiff,<br><br>v.<br><br>GINA SANCHEZ, in her official capacity as Bureau Chief of the Cemetery and Funeral Bureau; KIMBERLY KIRCHMEYER, in her official capacity as Director of the Department of Consumer Affairs; and LOURDES CASTRO RAMIREZ in her official capacity as Secretary of the Business, Consumer, and Housing Agency,<br><br>Defendants. | No.  2:20-CV-01306 KJM KJN<br><br><br>ORDER |

Plaintiffs include "end-of-life doulas" and volunteers affiliated with Full Circle of Living and Dying, a non-profit organization. For convenience, the court refers to all plaintiffs collectively as Full Circle. Full Circle offers advice, counseling and other services to families and loved ones of those who are dying. It is not a licensed funeral home, and the individual plaintiffs are not licensed funeral directors. But the defendant California Cemetery and Funeral Bureau has demanded the individual plaintiffs become licensed Funeral Directors and that Full Circle qualify

1

as a Licensed Funeral Establishment, and that plaintiffs cease operations and advertising their services in the meantime; the Bureau has threatened fines and prosecution if they do not. Full Circle alleges this threat and the law on which the regulators rely violate their rights to freedom of speech and substantive due process under the Fifth and Fourteenth Amendments.

Plaintiffs have moved for a preliminary injunction and defendants have moved to dismiss. The court held a hearing on both motions on November 6, 2020. Counsel Jeffery Rowes appeared for plaintiffs; Julianne Mossler appeared for defendants, with her supervisor Diann Sokoloff as directed by the court. As explained, the court denies the motion to dismiss and grants the motion for preliminary injunction.

I.    BACKGROUND

Full Circle is operated by plaintiffs Bonnie "Akhila" Murphy and Donna Peizer, who are "end-of-life doulas." Compl., ECF No. 1, ¶¶ 51–58. They help families perform "home funerals," which may include counseling before death for the dying and after death for the family, organizing an "end of life plan," and serving as an "extra pair of hands" in preparing a home funeral, including "bathing, dressing, and repositioning the body." *Id.* ¶¶ 66–72, 75–84. Full Circle has been offering these services since 2013. *Id.* ¶ 56. Its website states expressly that Full Circle and its representatives are not licensed funeral directors. *Id.* ¶¶ 156–58; *id.* Ex. D.[1]

Plaintiffs also include several past and potential clients who claim interests in having home funerals. *Id.* at 13; Mot. at 10. They argue that if Full Circle cannot offer its services, they will not be able to plan for end of life services as they would like. Compl. ¶¶ 130–32.

The conflict underlying this litigation took root in November 2019, when the Bureau issued a notice of citation and fine against both Ms. Murphy and Full Circle. *See* Opp'n Mot. Dismiss (Opp'n MTD), ECF No. 18 at 10; Compl. ¶ 162 & Ex. E. The notice directed Full Circle to "immediately discontinue advertising and operating as a funeral establishment until a license is issued by the Bureau," and threatened fines of up to $5,000. Opp'n MTD at 10; Compl.

---

[1] The website contains this disclaimer in red text at the bottom of every page. http://www.fullcirclelivingdyingcollective.com/ (last accessed Dec. 28, 2020).

1   ¶ 170. The next month, Full Circle and the Bureau met informally to review the citation, when,
2   according to Full Circle, the Bureau claimed Full Circle was improperly holding itself out as a
3   funeral director and the Bureau therefore would require licensure for Full Circle to continue
4   operating. Opp'n MTD at 10–11; Mot. Ex. 8; Compl. ¶¶ 164–65. The Bureau issued a follow-up
5   order on April 24, 2020, confirming this decision. Opp'n MTD at 11; Mot. Ex. 4; Compl. ¶ 193.
6   The Bureau did not identify the offending speech or conduct in the initial notice, the informal
7   hearing or its formal citation. Mot. Exs. 4, 8; Compl. ¶¶ 179–81, 188. Nor has it done so during
8   the hearing before the court, or anywhere else in the record as far as the court can discern.

9         On January 22, 2020, Full Circle requested a formal administrative hearing to
10  review the Bureau's decision. Mot. at 10 & Ex. 1. Before the hearing, Full Circle withdrew its
11  administrative appeal and filed this suit asserting as-applied First and Fourteenth Amendment
12  challenges to the Bureau's notices. *See* Opp'n MTD at 10 & Ex. 3. Full Circle now moves for a
13  preliminary injunction barring the Bureau "from preventing Plaintiffs from exercising, during the
14  pendency of this litigation, their First Amendment rights to give and receive individualized
15  advice, as well as their rights to engage in and receive commercial speech." ECF No. 12. The
16  Bureau opposes the plaintiffs' motion and moves to dismiss. *See generally* Mot. Dismiss, ECF
17  No. 13; Opp'n Prelim. Inj., ECF No. 16. The court considers the motion to dismiss first.

18  II.  MOTION TO DISMISS

19      A. Exhaustion

20        The Bureau relies primarily on challenges to this court's subject matter
21  jurisdiction, first contending the court lacks jurisdiction because Full Circle has not exhausted its
22  state-law administrative remedies. Mot. Dismiss at 12–14. But Full Circle brings its claims here
23  under the Civil Rights Act of 1871 and 42 U.S.C. § 1983, Compl. ¶ 3, and the Supreme Court has
24  made clear "on numerous occasions" that a § 1983 plaintiff such as Full Circle need not exhaust
25  "state administrative remedies," *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500
26  (1982).

27        The Bureau argues in reply that this rule has "evolved" since *Patsy*. Reply at 6. It
28  has not. Just last year the Supreme Court reaffirmed that "[t]he Civil Rights Act of 1871 . . .

guarantees 'a federal forum or claims of unconstitutional treatment at the hands of state officials,' and the settled rule is that 'exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983.'" *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019) (emphasis in original) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994), in turn quoting *Patsy*, 457 U.S. at 500). Defense counsel references the Prisoner Litigation Reform Act (PLRA) in making her evolutionary argument; in passing the PLRA, Congress did provide for an exception requiring exhaustion in inmates' § 1983 suits, but as the name of the Act suggests it has no application here. *See* 18 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

B. <u>Standing</u>

The Bureau also argues Full Circle lacks standing because it has not been injured and cannot show "a likelihood of substantial and immediate irreparable injury." Mot. Dismiss at 16–19. This argument is also unavailing.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (internal quotation omitted). The Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n. 2 (1992).

Here, Full Circle alleges the Bureau threatened it with fines and prosecution through the misapplication of a statutory scheme, and it argues the Bureau's enforcement order deprived it of freedoms to speak about and advertise its services. Compl. ¶¶ 209–24 & Ex. E. "The loss of First Amendment freedoms" such as these is a well-recognized injury that confers standing. *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976). Because the Bureau's notice is a "credible threat of prosecution," *Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (197), and thereby chills speech, *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618–619 (9th Cir. 1999), it satisfies the injury-in-fact requirement. The injury Full Circle asserts
/////

4

flows from the Bureau's alleged unconstitutional action. And if Full Circle obtains an injunction, its injuries would be redressed. It has standing.

The court declines to construe the notice narrowly as the Bureau urges, even as it has failed to clearly articulate what conduct it seeks to prohibit. Opp'n MTD at 21–22; Reply MTD at 4, ECF No. 19.[2] Rather, the Bureau contends Full Circle has no protectable right to advertise as an unlicensed funeral establishment, arguing it follows that Full Circle could not be unlawfully injured by a notice prohibiting it from doing so. Mot. at 21-22. This argument assumes its own conclusion. A plaintiff who asserts constitutional violations is not deprived of standing by a defendant's mere assertion that the defendant's actions are constitutional.

### C. Ripeness

The Bureau also argues Full Circle's claim is unripe. "Ripeness has both constitutional and prudential components." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010). "The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 2000) (en banc)). The inquiry in both situations is similar: is the threat of injury "definite and concrete" rather than "hypothetical or abstract"? *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted).

The Bureau makes two ripeness arguments here. First, it argues no conflict has materialized because Full Circle has not pursued its administrative remedies through to a final conclusion. Mot. Dismiss at 11–14. As explained above, exhaustion is not a prerequisite to plaintiffs' claim under § 1983. This argument fails.

Second, the Bureau argues Full Circle's fears are "speculative" and may never materialize in a full-fledged "enforcement action." Mot. at 15. When a plaintiff has not been prosecuted or fined and a defendant claims the action is unripe, the court considers "(1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings;

---

[2] Mislabeled as "Opposition by [defendants] to Motion to Dismiss" on the docket.

and (3) the history of past prosecution or enforcement under the challenged statute." *Wolfson*, 616 F.3d at 1058. In a First Amendment case, these requirements are applied "less stringently." *Id.* "To avoid the chilling effect of restrictions on speech, the Court has endorsed 'a hold your tongue and challenge now approach rather than requiring litigants to speak first and take their chances with the consequences.'" *Id.* (quoting *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)).

Under this standard, Full Circle's claims are not too speculative to be unripe. It has a "concrete plan," namely continued operations along the lines it always has observed. It received a notice directing it to cease and desist all communications, with fines ranging up to $5,000 for any violation. Compl. Ex. E. Full Circle need not wait until fines or other sanctions actually are imposed to bring its claim. "[T]he Supreme Court has repeatedly pointed out the necessity of allowing pre-enforcement challenges to avoid the chilling of speech." *Wolfson*, 616 F.3d at 1060. Although the record does not reflect information on the Bureau's other enforcement actions to provide historical context, the absence of information to allow consideration of this factor does not mean the factor outweighs the other two. *Cf. id.* (reaching same conclusion on similar record).

Full Circle's claim also is ripe in the prudential sense. Two considerations are relevant in assessing prudential ripeness: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

First, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (quoting *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989)). Here, Full Circle's claims are primarily legal and would not benefit from more factual development, and the Bureau's decision is final in that it already has given notice, affirmed that notice informally and threatened enforcement for noncompliance.

6

1    Second, "[t]o meet the hardship requirement, a litigant must show that withholding
2 review would result in direct and immediate hardship and would entail more than possible
3 financial loss." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (quoting *US West*
4 *Commc'ns*, 193 F.3d at 1118).  Withholding consideration would cause unnecessary hardship to
5 Full Circle.  It would be forced to choose between continuing established operations as it has
6 conducted them for several years and risking fines or withholding services.
7    Full Circle's claims are ripe.

### D. Subject Matter Jurisdiction and Questions of State Law

9    The Bureau further argues this court lacks jurisdiction because Full Circle's
10 complaint is an attempt to skirt state-court review of state law.  Mot. at 19–20.  It asks the court
11 defer to the Bureau's decision that Full Circle is operating as an unlicensed funeral establishment.
12 Mot. at 20 (". . . Plaintiffs have no constitutional right to advertise or engage in unlicensed
13 practice as a funeral establishment.").  This court recognizes it is bound to follow the Supreme
14 Court of California's interpretation of state law.  *See Melguin v. Hames*, 38 F.3d 1478, 1482 (9th
15 Cir. 1994).  But there is no unsettled question of California law at issue here, only questions of
16 federal constitutional law.  Federal courts commonly adjudicate constitutional challenges to state
17 laws and regulations, as Full Circle correctly points out.  *See* Opp'n MTD at 21 (citing *Brown v.*
18 *Entm't Merchants Ass'n*, 564 U.S. 786, 788 (2011) (California law could not be enforced because
19 it violated First Amendment)).

### E. Rule 12(b)(6)

21    The Bureau also moves for dismissal under Rule 12(b)(6) of the Federal Rules of
22 Civil Procedure, which provides a party may move to dismiss a complaint for "failure to state a
23 claim upon which relief can be granted."  A court may dismiss a complaint "based on the lack of
24 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."
25 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).
26    Although a complaint need contain only "a short and plain statement of the claim
27 showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion
28 to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

1   claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
2   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This factual matter must amount to more
3   than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and
4   conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting
5   *Twombly*, 550 U.S. at 555). Determining whether a complaint fails to state a claim is a "context-
6   specific task that requires the reviewing court to draw on its judicial experience and common
7   sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual
8   allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King &*
9   *Spalding*, 467 U.S. 69, 73 (1984).

10          The evaluation prompted by a 12(b)(6) motion requires the court to construe the
11  complaint in the light most favorable to the plaintiff and accept as true the factual allegations of
12  the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a
13  legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986)
14  (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject
15  to judicial notice" or to material attached to or incorporated by reference into the complaint,
16  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's
17  consideration of documents attached to a complaint, incorporated by reference or matter of
18  judicial notice, will not convert a motion to dismiss into a motion for summary judgment. *United*
19  *States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d
20  1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,
21  980 (9th Cir. 2002) (even though court may look beyond pleadings on motion to dismiss,
22  generally court is limited to face of complaint on 12(b)(6) motion).

23          In the Bureau's first argument invoking Rule 12(b)(6), it contends Full Circle's
24  speech is properly restricted because its content is false or misleading, i.e., that Full Circle has
25  falsely represented itself as a licensed funeral home managed by licensed funeral directors. Mot.
26  at 21. Contrary to the Bureau's assertions, however, plaintiff's allegations do not implicate false
27  or misleading speech. Full Circle alleges it does not have a license, and does not need one,
28  because its truthful speech does not implicate the regulations. Compl. ¶¶ 229–30, 240, 253–54.

The Bureau also argues the complaint does not state a claim because Full Circle has not alleged the personal involvement of the named defendant officials. Mot. at 23–24. This argument appears to be an invocation of *Monell v. Department of Social Services*, which governs § 1983 suits requesting monetary damages, as plaintiffs note. Opp'n at 25; Mot. at 23-24 (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002), in turn citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). Plaintiffs, however, do not request money damages. They request only injunctive relief in the face of alleged violations of the U.S. Constitution. It is hornbook law that the defendants named in the complaint, as the officeholders with enforcement authority, are the proper defendants to answer plaintiffs' claims. Compl. Ex. E.; *Ex Parte Young*, 209 U.S. 123, 159 (1908) ("[The Minnesota Attorney General's] power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit [requesting prospective injunctive relief].").

While the Bureau also moves to dismiss a procedural due process claim, *see* Mot. at 22–23, Full Circle does not advance a procedural due process claim, so the court disregards this argument entirely.

III.  PRELIMINARY INJUNCTION

Because the complaint survives the motion to dismiss, the court turns to the plaintiffs' motion for a preliminary injunction. Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). As provided by Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction to preserve the relative position of the parties pending a trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The party seeking injunctive relief must demonstrate it "is likely to succeed on the merits, . . . is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Before *Winter*, the Ninth Circuit employed a "sliding scale" or "serious questions" test to balance the elements of the test "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th

1    Cir. 2011) (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.
2    2003)). The Ninth Circuit has found that its "serious question" sliding scale test survived *Winter*,
3    meaning a court may issue a preliminary injunction when the moving party raises serious
4    questions going to the merits and demonstrates that the balance of hardships tips sharply in its
5    favor, so long as the court also considers the remaining two prongs from *Winter*. *Cottrell*, 632
6    F.3d at 1134-35. However, the court need not reach the other prongs if the moving party cannot
7    demonstrate at least a "fair chance of success on the merits." *Pimentel v. Dreyfus*, 670 F.3d 1096,
8    1111 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2008)) (internal
9    quotations omitted)).

10                   A.   <u>Likely Success on the Merits</u>

11           Full Circle claims the Bureau's notice will, if enforced, prevent it and its
12   volunteers from giving advice about preparing for death and providing support when someone is
13   dying, as is its mission. Compl. ¶¶ 218–24. For example, individual plaintiffs aver its volunteers
14   help people think about where they and their family members would like to die, where the
15   deceased will lie in honor, what the deceased will wear, who will visit and when, and who will
16   transport the remains to the deceased's final resting place. *See* Murphy Decl. ¶¶ 59-67, Mot.
17   Prelim. Inj. Ex. 2, ECF No. 12-2; Peizer Decl. ¶¶ 53-58, Mot. Prelim. Inj. Ex. 4, ECF No. 12-4.
18   Four "family plaintiffs" who would like to work with Full Circle's volunteers have also filed
19   declarations in support of the motion. These plaintiffs would like to obtain advice from Full
20   Circle regarding, for example, how to tend to the land where they would like to be buried, how to
21   prepare for later stages of dementia and Alzheimer's Disease, and how to plan a funeral at home.
22   *See generally* Yazell Decl., Mot. Prelim. Inj. Ex. 6, ECF No. 12-6; Hogan Decl., Mot. Prelim. Inj.
23   Ex. 7, ECF No. 12-7; Donaldson Decl., Mot. Prelim. Inj. Ex. 5, ECF No. 12-5; Mallgren Decl.,
24   Mot. Prelim. Inj. Ex. 8, ECF No. 12-8. Plaintiffs assert Full Circle cannot provide these services
25   and give this advice while the notice is pending with the potential for enforcement. *See* Mot.
26   Prelim, Inj. at 12, ECF No. 12-1; Compl. ¶ 2.

27           Full Circle also claims the Bureau's notice prevents it from advertising its services
28   on its website. The website explains what its volunteers do, offers in-home consultations, and

1 invites people to call to discuss what they want for their loved ones. *See, e.g.,* Murphy Decl.
2 ¶¶ 76, 78, 111 & Ex. D, ECF No. 12-3 at 26.

3       The Bureau offers no evidence to contradict plaintiffs' claims or rebut their
4 evidence. *See generally* Opp'n Prelim. Inj., ECF No. 16. It does not dispute that its notices, first
5 informally and then formally, prohibit Full Circle and its volunteers from giving advice and
6 maintaining its website. Nor does the Bureau dispute that when a government places limits on
7 speech protected by the First Amendment, the restrictions must survive "more exacting or
8 'heightened' scrutiny," which requires a government defendant to show at minimum that the
9 challenged law or regulation "'advances important governmental interests unrelated to the
10 suppression of free speech and does not burden substantially more speech than necessary to
11 further those interests.'" *Pac. Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d 1062,
12 1068 (9th Cir. 2020) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997)). And
13 yet the Bureau does not identify any government interest or explain why its notice does not
14 burden more speech than necessary to further an important interest.

15       Rather, the Bureau argues only (1) that the court lacks jurisdiction and (2) that Full
16 Circle's speech is "misleading" and does not "concern lawful activity." Opp'n Prelim. Inj. at 3–7.
17 As explained above, the court has subject matter jurisdiction. On this record, Full Circle has
18 offered uncontroverted evidence that it does not claim to operate a funeral home or to employ
19 funeral directors. Plaintiffs have carried their burden to show they are likely to succeed on the
20 merits of their First Amendment claim. *United States v. Odessa Union Warehouse Co-op*, 833
21 F.2d 172, 176 (9th Cir. 1987) (finding likelihood of success justifying preliminary injunction
22 based on evidence being uncontested).

23       B.  <u>Irreparable Harm</u>

24       The "loss of First Amendment rights, for even minimal periods of time,
25 unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196,
26 1207–08 (9th Cir.2009) (citing *Elrod*, 427 U.S. at 373). As the Ninth Circuit has pointedly
27 observed, "[a] colorable First Amendment claim is irreparable injury sufficient to merit the grant
28 of relief." *Am. Beverage Ass'n v. City and Ct'y of San Francisco*, 916 F.3d 749, 758 (9th Cir.

2019). That said, only "purposeful unconstitutional suppression of speech constitutes irreparable harm for preliminary injunction purposes." *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

On this prong as well, Full Circle has carried its burden to show it faces irreparable harms if the Bureau's notice is not enjoined while this litigation is pending. The Bureau's assertion of a licensure requirement prohibits Full Circle from offering services on its website, and thus is purposeful suppression of commercial speech. *See, e.g.*, *Virginia State Board of Pharmacy*, 425 U.S. at 761. While the Bureau here as well argues the speech in question is misleading or false, *see* Opp'n Prelim. Inj. at 7–8, this argument fails for the same reasons discussed above in resolving the motion to dismiss.

The Bureau also argues Full Circle faces no imminent threat of harm because it has continued operating despite abandoning its administrative appeal before filing suit. *See id.* at 8. But based on the record before the court, the Bureau has neither withdrawn its notice, indicated its intention to do so at any time, nor abandoned its position that Full Circle must obtain licenses under the Business and Professions Code in order to operate.

### C. The Public Interest and Balance of Equities

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Here, the balance of equities tips in favor of Full Circle. In response to Full Circle's allegations of constitutional deprivations, the Bureau offers a single-sentence assertion saying only that "[a]n order granting Plaintiffs' motion would damage the public by permitting Plaintiffs to provide advice in areas where licensure is required." Opp'n Prelim. Inj. at 9. The Bureau has established neither that licenses are required for plaintiffs in this case nor that suspending the license requirement as it applies to Full Circle while this lawsuit is pending would cause any harm.

### IV. CONCLUSION

Plaintiffs' motion for a preliminary injunction is granted. Defendants' motion to dismiss is **denied**. This order resolves ECF Nos. 12, 13. Parties are directed to file a joint status

/////

1 | report 21 days from the filed date of this order addressing their respective positions on scheduling
2 | of the case going forward.  The court will then issue a scheduling order.
3 |     IT IS SO ORDERED.
4 | DATED: December 28, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE