JOHN KAPPOS (CA Bar No. 171977)
HANA OH (CA Bar No. 300846) (*admission pending*)
O'MELVENY & MYERS LLP
610 Newport Center Drive
17th Floor
Newport Beach, California 92660-6429
Telephone:     +1 949 823 6900
Facsimile:     +1 949 823 6994

KEVIN DÍAZ (*pro hac vice forthcoming*)
COMPASSION & CHOICES
101 SW Madison Street
Unit 8009
Portland, Oregon 97207
Telephone:     +1 503 943 6532
Facsimile:     +1 503 228 9160

JESSICA PEZLEY (*pro hac vice forthcoming*)
COMPASSION & CHOICES
1001 Connecticut Ave
NW Ste 522
Washington, DC 20036
Telephone:     +1 202 805 0502
Facsimile:     +1 503 228 9160

Attorneys for *Amicus Curiae*
Compassion & Choices

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULL CIRCLE OF LIVING AND DYING; BONNIE "AKHILA" MURPHY; DONNA PEIZER; PAMELA YAZELL; KAY HOGAN; JANAIA DONALDSON; AND ROBIN MALLGREN,<br><br>Plaintiffs,<br><br>v.<br><br>GINA SANCHEZ, in her official capacity as Bureau Chief of the Cemetery and Funeral Bureau; KIMBERLY KIRCHMEYER, in her official capacity as Director of the Department of Consumer Affairs; and LOURDES CASTRO RAMIREZ in her official capacity as Secretary of the Business, Consumer, and Housing Agency,<br><br>Defendants. | Case No. 2:20-cv-01306-KJM-KJN<br><br>**BRIEF OF AMICUS CURIAE COMPASSION & CHOICES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: December 17, 2021<br>Time: 10:00 am<br>Place: 3, 15th Floor<br>Judge: Hon. Kimberley J. Mueller<br><br>Date of filing: November 19, 2021 |

# TABLE OF CONTENTS

**Page**

I.    INTEREST OF *AMICI CURIAE* .................................................................... 1

II.   SUMMARY OF ARGUMENT ......................................................................... 1

III.  ARGUMENT ................................................................................................... 2

    A.    Death doulas are laypeople who provide support and information to empower individuals at the end of life. ....................................................... 2

    B.    Death doulas fill a void in traditional healthcare and funeral services and advance patient-directed care. ........................................................................ 5

        1.    Death doulas further patient-directed care by providing information and services that support an individual's practical, emotional, and spiritual needs at the end of life. ................................................................ 6

        2.    Death doulas fill a void in the healthcare system by bolstering informed consent and by complementing care from hospices, hospitals, and senior care facilities. ............................................................ 7

        3.    Death doulas fill a void in conventional funeral director services by assisting families with the grieving process and by educating the community about affordable funeral alternatives. .................................... 10

    C.    Death doulas should not be subject to the same regulations as a conventional funeral home or funeral director. ......................................... 12

        1.    Death doulas do not offer services that touch the operations of funeral homes or funeral directors and are thus outside the scope of services that legislators intended to regulate. ............................................ 12

        2.    Regulation of death doulas will severely restrict their ability to provide information about end-of-life options and will hurt patients. ...... 14

        3.    Death doulas have a First Amendment right to provide information about end-of-life options and individuals have a right to receive this information. ............................................................................................... 16

IV.   CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartnicki v. Vopper,*
    532 U.S. 514 (2001)............................................................................................16

*Bolger v. Youngs Drug Products Corp.,*
    463 U.S. 60 (1983)............................................................................................17

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
    447 U.S. 557 (1980)............................................................................................17

*Lovell v. City of Griffin, Ga.,*
    303 U.S. 444 (1938)............................................................................................16

*Martin v. City of Struthers, Ohio,*
    319 U.S. 141 (1943)............................................................................................17

*Nat'l Inst. of Fam. and Life Advoc. v. Becerra,*
    138. S. Ct. 2361 (2018)...........................................................................16, 17, 18

*St. Joseph v. Castille,*
    712 F.3d 215 (5th Cir. 2013)..............................................................................13

*Stanley v. Georgia,*
    394 U.S. 557......................................................................................................17

**Statutes**

Cal. Bus. & Prof. Code § 7601.1 (West)................................................................12

Cal. Bus. & Prof. Code § 7616 (West)..................................................................15

Cal. Bus. & Prof. Code § 7619.3 (West)...............................................................14

Cal. Bus. & Prof. Code § 7622 (West)..................................................................14

Cal. Bus. & Prof. Code § 7622.2 (West)...............................................................12

Cal. Bus. & Prof. Code § 7685 (West)..................................................................13

Cal. Health & Safety Code § 443.2-3 (West) ..........................................................4

1
2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

**Other Authorities**

4
5

Abby Ellin, *'Death Doulas' Provide Aid at the End of Life*, New York Times (June 25, 2021), available at https://www.nytimes.com/2021/06/24/well/doulas-death-end-of-life.html ..................................................................................4, 9, 14, 18

6
7
8

Amy M. Sullivan, Matthew D. Lakoma & Susan D. Block, *The Status of Medical Education in End-of-life Care*, 18 J. Gen. Intern. Med. 685 (2013), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1494921/pdf/jgi_21215.pdf .........................8

9
10

Barbara Coombs Lee, *From Patient-Centered to Patient-Directed Care*, Compassion & Choices (March 1, 2019), available at https://compassionandchoices.org/news/from-patient-centered-to-patient-directed-care/..................................................................................................5, 6

11
12
13

Board of Governors of the Federal Reserve System, *Report on the Economic Well-Being of U.S. Households in 2020*, available at https://www.federalreserve.gov/publications/files/2020-report-economic-well-being-us-households-202105.pdf .........................................................11

14
15
16

Bureau of Labor Statistics, *Occupational Outlook Handbook, Funeral Service Occupations*, Department of Labor (*last modified* October 21, 2021), https://www.bls.gov/ooh/personal-care-and-service/funeral-service-occupations.htm#tab-2 ...........................................................10, 12, 15

17
18
19

Coburn Dukehart, *Doulas: Exploring a Tradition of Support*, NPR, (July 14, 2011), https://www.npr.org/sections/babyproject/2011/07/14/137827923/doulas-exploring-a-tradition-of-support ..............................................................................2

20
21
22

Derek Doyle, *Principles of Palliative Care*, International Association for Hospices and Palliative Care (November 6, 2021), available at https://hospicecare.com/what-we-do/publications/getting-started/principles-of-palliative-care/..................................................................................................6

23

Erich Brenner, *Human body preservation – old and new techniques*, 224 J. Anatomy, 316 (2014), available at https://doi.org/10.1111/joa.12160 ....................................12

24
25
26

Hannah Hagemann, Death Doulas Are Becoming Part of the End-of-Life Equation (January 3, 2020), available at https://www.npr.org/2020/01/03/793257344/one-way-to-die-hire-an-end-of-life-doula ..............................................................................................3, 4

27
28

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Jennifer A. Woo, Guy Maytal & Theodore A. Stern, *Clinical Challenges to the Delivery of End-of-Life Care*, 8 Prim. Care Companion J. Clin. Psych. 367 (2006), available at https://doi.org/10.4088/pcc.v08n0608 ......................................7, 8, 10, 15

John Leland, *The Positive Death Movement Comes to Life*, New York Times (June 22, 2018), available at https://www.nytimes.com/2018/06/22/nyregion/the-positive-death-movement-comes-to-life.html.......................................................9, 10

Kara Mason, *Embracing End-of-life doulas growing in popularity*, Associated Press (May 15, 2021), available at https://apnews.com/article/coronavirus-pandemic-lifestyle-health-business-3b4e6af60889b69fde4f8fc14d01f7af.............................4, 8

Kim Callinan, *Medical Aid in Dying: The Role of Death Doulas*, Compassion & Choices (February 1, 2021), available at https://compassionandchoices.org/news/medical-aid-in-dying-the-role-of-death-doulas/ .......................................................................................................4

Lee Webster, *Why Caring For Our Own Dead Is An Act of Social Justice*, 8 Wake Forest J. L. & Pol'y 125, 127 (2018) ........................................................8, 14

*Licensed funeral establishments: price list: Internet posting, Hearing on S.B. 658 before the S. Comm. on Bus., Prof., and Econ. Dev.*, 2011 Leg. (2011), available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=20112 0120SB658#.........................................................................................................13

Marian Krawczyk & Merilynne Rush, *Describing the end-of-life doula role and practices of care: perspectives from four countries*. 14 J. Palliative Care & Soc. Prac. 1 (2020), available at https://doi.org/10.1177/2632352420973226................ *passim*

Merriam-Webster (November 6, 2021), available at https://www.merriam-webster.com/dictionary/doula#:~:text=%3A%20a%20woman%20experienced %20in%20childbirth,during%2C%20and%20just%20after%20childbirth ..............................3

Michael Ollove, *Why Some Patients Aren't Getting Palliative Care*, Pew Charitable Trusts (July 10, 2017), available at https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2017/07/10/why-some-patients-arent-getting-palliative-care..................................................................................................8, 9

*NCI Dictionaries*, National Cancer Institute (November 6, 2021), https://www.cancer.gov/publications/dictionaries/cancer-terms/def/end-of-life-care .....................................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Nelson Marlborough District Health Board, *The Infectious Hazards of Dead Bodies* (September 28, 2020), available at https://www.nmdhb.govt.nz/dmsdocument/61-the-infectious-hazards-of-dead-bodies ...................................................................................................................13

*Palliative care: A spectrum of support*, NIH Medline Plus Magazine (April 24, 2018), available at https://magazine.medlineplus.gov/article/palliative-care-a-spectrum-of-support .........................................................................................................6

Raman Kumar & Vijay Kumar Chattu, *What is in the name? Understanding terminologies of patient-centered, person-centered, and patient-directed care*, 7 J. Fam. Med. Prim. Care 487 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6069658/ ........................................5

*Risks posed by dead bodies after disasters*, World Health Organization (February 6, 2013), available at https://www.who.int/publications/m/item/risks-posed-by-dead-bodies-after-disasters...........................................................................................14

Signe Peterson Flieger, Kenneth Chui & Susan Koch-Weser, *Lack of Awareness and Common Misconceptions About Palliative Care Among Adults: Insights from a National Survey*, 35 J. Gen. Intern. Med. 2059 (2020), available at https://link.springer.com/content/pdf/10.1007/s11606-020-05730-4.pdf...................................9

Tanya D. Marsh, *Rethinking the Law of the Dead*, 48 Wake Forest L. Rev. 1327 (2013) .....................................................................................................................15

Victoria J. Haneman, *Funeral Poverty*, 55 U. Mich. L. Rev. 387 (2021)............................. *passim*

I.     **INTEREST OF *AMICI CURIAE***

Compassion & Choices is a non-profit organization whose mission is to improve care, expand options, and empower everyone to chart their end-of-life journey. Its services include educating the public about the importance of documenting their end-of-life values and priorities, empowering individuals to control their end-of-life care by providing information about the full-range of available options at the end of life, advocating for expanded end-of-life options and improved medical practices that prioritize patients, and defending existing end-of-life options from efforts to restrict access.

Given its mission and services, Compassion & Choices is uniquely positioned to comment about the importance of death doulas—service providers who support individuals and the relatives of individuals nearing the end of life—and why they should not be regulated as funeral directors. It submits this brief to inform the court that ruling in favor of Defendants will force most, if not all, death doulas out of practice. This will have adverse consequences for the many individuals who benefit from the services and information that death doulas provide. Such a ruling will significantly reduce access to key information for individuals nearing the end of life and their relatives, the control individuals have over their end-of-life and after-death care, and their ability to die and have a post-death ritual in accordance with their values and beliefs.

II.     **SUMMARY OF ARGUMENT**

Death doulas are laypeople who support individuals nearing the end of life and their family members. They do so emotionally, spiritually, and practically. Death doulas also educate these individuals by providing information about end-of-life and after-death care options, such as at-home funerals, cremations, and green burials. In providing these services, death doulas empower individuals to feel confident in making important end-of-life decisions about their care so that individuals can remain true to their values and beliefs as they go through the dying process.

The services that death doulas provide play an important role in furthering patient-directed care at the end of life. They do so in a number of ways. First, they complement traditional end-of-

life medical care services by providing non-judgmental emotional, practical, and spiritual support. Second, death doulas fill a void in the healthcare system by acting as a patient advocate. They do so by helping individuals make more informed and personalized decisions about their care through education about end-of-life and after-death options. Third, death doulas fill a void in conventional funeral home and funeral director services by assisting families with the grieving process and by supporting the availability of affordable funeral alternatives through transparent information about those alternatives.

Death doulas should not be subject to the same regulations as funeral homes and funeral directors. Death doulas offer fundamentally different services than funeral homes and funeral directors and do not touch the activities that legislators intended to regulate through the Cemetery and Funeral Act. Moreover, strictly regulating death doulas as funeral directors will effectively put death doulas out of business as many lack the financial resources to comply with the expensive regulations of that industry. This will consequently extinguish their ability to provide information about end-of-life options and will hurt dying individuals and their loved ones by limiting their ability to make informed decisions about their end-of-life and after-death care. Lastly, regulating death doulas as if they were funeral homes or funeral directors infringes on their First Amendment free speech right to provide information about end-of-life and after-death care options and of their clients' rights to receive this information.

## III.   ARGUMENT

### A.   Death doulas are laypeople who provide support and information to empower individuals at the end of life.

A "doula" is a trained companion who supports others through a significant health-related experience. The term "Doula" is Greek in origin and roughly translates to "a woman who serves."[1] Notably, a doula is traditionally a layperson with no formal medical education.[2] They do

---

[1] Coburn Dukehart, *Doulas: Exploring a Tradition of Support*, NPR (July 14, 2011),
https://www.npr.org/sections/babyproject/2011/07/14/137827923/doulas-exploring-a-tradition-of-support.

[2] Marian Krawczyk & Merilynne Rush, *Describing the end-of-life doula role and practices of care: perspectives from four countries*. 14 J. Palliative Care & Soc. Prac. 1, 1 (2020), available
at https://doi.org/10.1177/2632352420973226.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

not provide medical support or advice.[3] Rather, doulas provide information, emotional support, and physical comfort during major medical events.[4] While the term "doula" traditionally referred to those who assist women giving birth,[5] the term has expanded to also include those who help guide individuals and their loved ones through the dying process.

A death doula, also known as an end-of-life doula, is an emerging form of community-based caregiver whose job is to help individuals nearing the end of life—as well as their loved ones—navigate that experience as peacefully and supportively as possible.[6] The death doula movement is growing,[7] as is the recognition of the unique care and contributions they provide at the end of life.[8]

Consistent with the definition of a traditional doula, death doulas are laypeople that have no specialized professional training.[9] They do not provide medical treatment or advice, legal advice, or formal counseling or therapy.[10] Nor do they provide embalming, funeral, or transportation services.[11] Rather, death doulas provide four important things to those nearing the end of life.

First, death doulas offer non-judgmental emotional, spiritual, and practical support to dying individuals and their loved ones. This support—whether it is holding a dying individual's hand or keeping an individual's grieving family company—is immeasurably important to an individual and their loved ones at the end of life. Some doulas continue to provide care after an individual's death, such as helping the grieving family wash and dress the body or assisting with

---

[3] *Id.* at 8.

[4] *Id.* at 5.

[5] Merriam-Webster (November 6, 2021), available at https://www.merriam-webster.com/dictionary/doula#:~:text=%3A%20a%20woman%20experienced%20in%20childbirth,during%2C%20and%20just%20after%20childbirth.

[6] *See* Krawczyk, *supra* note 2 at 5.

[7] *Id.* at 2.

[8] Hannah Hagemann, Death Doulas Are Becoming Part of the End-of-Life Equation (January 3, 2020), available at https://www.npr.org/2020/01/03/793257344/one-way-to-die-hire-an-end-of-life-doula.

[9] Krawczyk, *supra* note 2 at 1.

[10] *See id.* at 5-7.

[11] *See id.* at 8.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1  home funerals.[12] Second, death doulas provide education about end-of-life and after-death

2  planning. They may do this on an individual level, speaking directly to a dying individual about

3  their specific priorities and to help them understand their end-of-life and after-death options.

4  Death doulas may also provide education at a community level, hosting community education

5  events and advance care planning workshops, to help remove stigma from conversations about

6  death and encourage the public to engage in end-of-life planning.[13] This education assists

7  individuals in making fully informed end-of-life decisions.

8         Third, death doulas often act as a patient advocate, helping ensure an individual gets the

9  care they want. Death doulas achieve this by amplifying a patient's voice and assisting them as

10 they navigate the complexities of obtaining the care they want. For example, death doulas can

11 discuss an individual's priorities and provide information helpful to an individual as they

12 memorialize their end-of-life wishes in an advance directive or help an individual navigate the

13 complicated statutory requirements of obtaining a medical aid-in-dying prescription.[14]

14        Lastly, death doulas empower an individual to make decisions about their own end-of-life

15 care or assist in the care of a loved one.[15] By providing support and information to dying

16 individuals and their loved ones, death doulas help ensure that individuals receive the care that is

17 best for them at the end of life.

18        Death doulas provide these services in a variety of settings, including at an individual's

19 home, hospice centers, hospitals, and long-term care facilities.[16] While some death doulas charge

20 modest fees for their services, many death doulas work on a volunteer basis.[17]

21

22 [12] *Id.* at 5-6.

23 [13] *Id.* at 1-2.

24 [14] *See* Kim Callinan, *Medical Aid in Dying: The Role of Death Doulas*, Compassion & Choices (February 1, 2021), available at https://compassionandchoices.org/news/medical-aid-in-dying-the-role-of-death-doulas/; *see also* Cal. Health & Safety Code § 443.2-3 (West).

25 [15] Krawczyk, *supra* note 2 at 7.

26 [16] *Id.* at 6.

27 [17] *See generally* Kara Mason, *Embracing End-of-life doulas growing in popularity*, Associated Press (May 15, 2021), available at https://apnews.com/article/coronavirus-pandemic-lifestyle-health-business-
3b4e6af60889b69fde4f8fc14d01f7af; *see also* Abby Ellin, *'Death Doulas' Provide Aid at the End of Life*, New York

28 Times (June 25, 2021), available at https://www.nytimes.com/2021/06/24/well/doulas-death-end-of-life.html.

**B.** **Death doulas fill a void in traditional healthcare and funeral services and advance patient-directed care.**

Medical care is only one aspect of the support an individual needs at the end of life. Death doulas help to make end-of-life care more holistic, focusing on an individual's spiritual, emotional, and practical needs, while also educating and empowering individuals to make the end-of-life and after-death decisions that are best for them. Working with medical professionals, death doulas fill a void in the traditional medical system, helping to ensure an individual's care is self-directed and fits their unique needs.

The medical profession has traditionally been focused on treating patients' illnesses through a physician-directed approach.[18] Under this approach, healthcare workers provide care based on evaluating the signs and symptoms presented by a patient, recommending medically indicated courses of treatment, observing and assessing the outcome of that treatment, and then repeating this cycle if necessary.[19] While this approach can be effective in curing illness, the patient's individual wants and needs are largely ignored.[20] Under this model, physicians, and not patients, are the decision makers. In essence, a patient's limited role under this paternalistic method is to trust and comply with the directions of trained medical staff.

In response to physician-directed care, a new healthcare ideology has emerged that focuses on a patient's individual needs and desires, allowing the patient to direct the care they receive.[21] Patient-directed care offers a more holistic approach tailored to meet a patient's medical needs *and* individual priorities.[22] Patients are the decision maker and have a high level of control in choosing or refusing treatment in accordance with their individual values.[23] This

---

[18] Raman Kumar & Vijay Kumar Chattu, *What is in the name? Understanding terminologies of patient-centered, person-centered, and patient-directed care*, 7 J. Fam. Med. Prim. Care 487, 487 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6069658/.

[19] *See id.*

[20] *See id.*

[21] *See id.*

[22] *Id.*

[23] *Id.* at 488; *see also* Barbara Coombs Lee, *From Patient-Centered to Patient-Directed Care*, Compassion & Choices (March 1, 2019), available at https://compassionandchoices.org/news/from-patient-centered-to-patient-directed-care/

1    approach thus shifts decision-making power into the hands of the patient, allowing them

2    autonomy to direct their own medical care. Patient-directed care is especially important at the end

3    of life, allowing an individual's values and beliefs to guide the kind of care they receive in their

4    final moments of life.[24]

5          Death doulas play an important role in advancing patient-directed care in two ways. First,

6    they assist in ensuring that patients are provided with the full spectrum of care at the end-of-life.

7    Second, they help to fill a void in end-of-life care provided in traditional healthcare settings.

8                 1.      **Death doulas further patient-directed care by providing information
                          and services that support an individual's practical, emotional, and
9                         spiritual needs at the end of life.**

10         Death doulas help to enhance the full spectrum of care by offering the support and

11   education necessary for individuals to feel empowered and make fully-informed end-of-life

12   decisions. The full-spectrum of care at the end of life offers comprehensive and holistic treatment

13   to patients nearing the end-of-life, addressing an individual's medical, psychological, social,

14   cultural, and spiritual needs.[25] Providing an individual nearing the end of life with the full

15   spectrum of care options helps to manage the discomfort, symptoms, and stress of what they are

16   experiencing and improves the individual's quality of life by ensuring that *all* of their needs are

17   met.[26]

18         A death doula's services complement the full spectrum of care at the end of life in myriad

19   ways. First, death doulas provide important education to individuals nearing the end of life and to

20   their loved ones that would otherwise be difficult to obtain. For example, death doulas provide

21   information about after-death options, such as at-home funerals and cremation, as well as about

22   the laws that govern a decedent's body.[27] Without the valuable services that death doulas provide,

23   individuals would be forced to rely on funeral homes and funeral directors for this information—

24   [24] Coombs Lee, *supra* note 23.

25   [25]*See generally* Derek Doyle, *Principles of Palliative Care*, International Association for Hospices and Palliative
     Care (November 6, 2021), available at https://hospicecare.com/what-we-do/publications/getting-started/principles-of-
26   palliative-care/.

27   [26] *Palliative care: A spectrum of support*, NIH Medline Plus Magazine (April 24, 2018), available at
     https://magazine.medlineplus.gov/article/palliative-care-a-spectrum-of-support.

28   [27] Krawcyzk, *supra* note 2 at 7.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1   actors that have a vested financial interest in promoting conventional funeral home services—and

2   are thus less likely to learn about alternatives to conventional funerals.[28]

3   Second, death doulas work closely with individuals at the end of life to help them better

4   understand their emotions and spiritual beliefs as they navigate their experience.[29] In doing so,

5   death doulas help individuals and their loved ones cope with the difficult emotions that inevitably

6   arise during the end-of-life process. Understanding these emotions gives individuals a greater

7   sense of control over the process and helps to preserve individual dignity throughout the end of

8   life.[30]

9   Lastly, because death doulas are able to spend a significant amount of time with their

10  patients, they have a greater capacity to be present with individuals nearing the end of life than

11  traditional healthcare workers. This flexibility allows death doulas to be more responsive to the

12  patient's supportive needs as they arise than traditional healthcare workers.

13  By providing individuals nearing the end of life with valuable information and services

14  that advance the full spectrum of care, death doulas help enhance patient-directed care by

15  empowering them to dictate the terms of their care at the end of life and after death.

16        **2.**    **Death doulas fill a void in the healthcare system by bolstering informed consent and by complementing care from hospices, hospitals, and senior care facilities.**

18  Traditional healthcare systems—such as hospice care, palliative care, nursing homes, and

19  senior-care facilities—are primarily concerned with the medical aspect of end-of-life care,

20  focusing on controlling pain and other symptoms to provide maximum comfort to a dying

21  patient.[31] These traditional healthcare providers, however, are generally unable to exclusively

22  focus on the emotional, spiritual, or practical needs of an individual or their loved ones at the end

23  of life.

---

[28] Victoria J. Haneman, *Funeral Poverty*, 55 U. Mich. L. Rev. 387, 405-06 (2021).

[29] *See* Krawcyzk, *supra* note 2 at 7.

[30] *See* Jennifer A. Woo, Guy Maytal & Theodore A. Stern, *Clinical Challenges to the Delivery of End-of-Life Care*, 8 Prim. Care Companion J. Clin. Psych. 367, 368 (2006), available at https://doi.org/10.4088/pcc.v08n0608.

[31] *NCI Dictionaries*, National Cancer Institute (November 6, 2021), https://www.cancer.gov/publications/dictionaries/cancer-terms/def/end-of-life-care.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

One reason for this is that healthcare workers often lack resources to assist with a patient's full range of end-of-life needs.[32] In 2003, a poll of 1455 medical students and 296 residents affiliated with 62 accredited U.S. medical schools found that only 18% of participants had received any formal training in end-of-life care.[33] In addition to a lack of training in delivering difficult news to patients, traditional healthcare workers often lack the resources to provide healthcare that is individually tailored to the needs of the patient given the burdensome demands of caring for multiple patients, even though they may want to. This was especially pronounced during the COVID-19 pandemic.[34] Because of these inadequacies, patients nearing the end of life frequently lack holistic support from traditional healthcare workers.

Another reason is that healthcare workers are often uncomfortable in talking about death with patients or with that person's family members.[35] This discomfort may be partly driven by a generational shift in perspective about death. This shift has morphed death from an ordinary part of life into a taboo that should be seldom spoken about.[36] Furthermore, end-of-life healthcare workers are often undercompensated as compared to other healthcare workers and are thus disincentivized from more meaningfully connecting with their patients.[37]

On top of the challenges presented by the inadequacies of traditional end-of-life healthcare offerings, many patients nearing the end of life often have limited access to these options.[38] This stems partly from restrictive definitions of who qualifies for end-of-life treatment.[39] For example, some health insurance plans only cover individuals who are

---

[32] Woo, et al., *supra* note 30 at 369.

[33] Amy M. Sullivan, Matthew D. Lakoma & Susan D. Block, *The Status of Medical Education in End-of-life Care*, 18 J. Gen. Intern. Med. 685, 685 (2013), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1494921/pdf/jgi_21215.pdf.

[34] *See* Mason, *supra* note 17.

[35] Woo, et al., *supra* note 30 at 370.

[36] *See* Haneman, *supra* note 28 at 390; *see also* Lee Webster, *Why Caring For Our Own Dead Is An Act of Social Justice*, 8 Wake Forest J. L. & Pol'y 125, 127 (2018).

[37] *See* Woo, et al., *supra* note 30 at 369-70.

[38] Michael Ollove, *Why Some Patients Aren't Getting Palliative Care*, Pew Charitable Trusts (July 10, 2017), available at https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2017/07/10/why-some-patients-arent-getting-palliative-care.

[39] *Id.*

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

hospitalized or in hospice.[40] Consequently, these services typically do not cover individuals who are expected to live fewer than six months or who cease curative treatment, forcing patients into the uncomfortable dilemma of either continuing treatment and fighting to stay alive or foregoing treatment and accessing end-of-life care.[41] Moreover, even when insurance plans do cover end-of-life care, they rarely cover home visits.[42] This is all compounded by a lack of awareness about the availability of robust end-of-life care, like palliative care, with one recent survey indicating that fewer than 30% of participants knew about palliative care.[43]

Death doulas help address these healthcare shortcomings in several ways. First, because dealing with death is an everyday part of their job, death doulas are well equipped to provide non-medical support to help individuals nearing death navigate that experience. Death doulas do not shy away from death; they embrace it.[44] They are comfortable discussing and preparing for death. This comfort ensures that they can engage in meaningful dialogue with clients about their end-of-life experiences, help individuals create an end-of-life plan, advocate for an individual's end-of-life needs, and provide the non-judgmental emotional, practical, and spiritual support that these patients often lack.

Second, death doulas help provide affordable end-of-life care to individuals who may not be able to access expensive, traditional end-of-life care options. This is because unlike traditional end-of-life care providers, many death doulas work on a volunteer or donation basis.[45] Because of this affordability, death doulas serve a segment of the population that would otherwise be without meaningful end-of-life care. Lastly, death doulas provide important information about end-of-life planning options and help raise awareness about traditional healthcare offerings like palliative

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Signe Peterson Flieger, Kenneth Chui & Susan Koch-Weser, *Lack of Awareness and Common Misconceptions About Palliative Care Among Adults: Insights from a National Survey*, 35 J. Gen. Intern. Med. 2059, 2059 (2020), available at https://link.springer.com/content/pdf/10.1007/s11606-020-05730-4.pdf.

[44] *See* John Leland, *The Positive Death Movement Comes to Life*, New York Times (June 22, 2018), available at https://www.nytimes.com/2018/06/22/nyregion/the-positive-death-movement-comes-to-life.html.

[45] Ellin, *supra* note 17.

1  care that many patients may be unaware of.[46] In doing so, death doulas help patients navigate

2  complex healthcare systems to get the care that works best for them medically, personally, and

3  financially. As such, death doulas help ensure that individuals can exercise their autonomy by

4  making fully informed decisions.[47]

5          3.      **Death doulas fill a void in conventional funeral director services by assisting families with the grieving process and by educating the community about affordable funeral alternatives.**

6

7        Death doulas perform a fundamentally different role than that of funeral directors

8  operating out of a funeral home. Death doulas work with dying individuals and their loved ones to

9  help ascertain the after-death ritual that is best for them, whether it is a conventional burial,

10  cremation, or home funeral. After an individual dies, death doulas assist their loved ones as they

11  navigate the grieving process and help effectuate an individual's after-death decisions.

12        By contrast, a conventional funeral director's services are focused on providing logistical

13  and administrative services, not emotional support. According to the Bureau of Labor Statistics

14  Outlook Handbook, a funeral director's typical responsibilities include removing and transporting

15  corpses, confirming signs of death, embalming corpses, planning funerals, preparing obituaries,

16  coordinating burials and cremations, and handling administrative tasks such as obtaining death

17  certificates and notifying the Social Security Administration of a person's death.[48] While a

18  funeral director may also provide information and resources on support groups to help the

19  grieving friends and family, most outsource these services rather than provide them themselves.[49]

20        However, many people cannot take advantage of these conventional funeral services

21  because they have become prohibitively expensive. Today, the median funeral costs are close to

22  *ten thousand dollars*.[50] This is particularly troubling given that a recently conducted survey by the

23

---

24  [46] *See* Krawcyzk, *supra* note 2 at 7.

25  [47] *See id.* at 8; *see also* Woo, et al., *supra* note 30 at 368.

26  [48] Bureau of Labor Statistics, *Occupational Outlook Handbook, Funeral Service Occupations*, Department of Labor (*last modified* October 21, 2021), https://www.bls.gov/ooh/personal-care-and-service/funeral-service-occupations.htm#tab-2.

27  [49] *See id.*

28  [50] Haneman, *supra* note 28 at 412.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1  Federal Reserve found that a quarter of Americans identified that they would be unable to afford

2  an unexpected $400 emergency expense.[51]

3      Death doulas help fill the gaps in conventional funeral services by providing services not

4  usually offered by funeral directors and by shedding light on more affordable alternatives.

5  Through this service, death doulas help ensure that a grieving family's needs are met and that a

6  dying individual and their loved ones know the full range of after-death options so they can

7  choose the option that best fits their spiritual, cultural, and individual needs.

8      First, while most funeral directors do not offer grief support to a decedent's family

9  members, grief support is an integral part of a death doula's responsibilities. This includes

10  providing emotional and spiritual support to a decedent's friends and loved ones to help them

11  navigate the grief associated with death and the dying process. Beyond this, death doulas offer

12  emotional support to dying individuals throughout the entire process, and sometimes long before,

13  unlike funeral directors who typically become involved only after a person's death.

14      Second, death doulas help educate consumers in a transparent manner about the full range

15  of after-death options, including alternatives to expensive conventional funeral home services, so

16  that individuals can meaningfully select between those options. For example, death doulas

17  regularly inform individuals about at-home funerals, cremations, and green burials as part of their

18  after-death care-planning sessions. These options all cost substantially less than a conventional

19  funeral service,[52] and may better align with an individual's cultural, spiritual, or environmental

20  beliefs. In providing these educational services, death doulas help ensure that individuals are

21  informed about *all* after-death options, including conventional funerals and funeral alternatives.

22  Individuals may still decide that a conventional funeral best suits their needs. A death doula's job

23  is not to dissuade them of that decision. It is simply to ensure that individuals know their full-

24  range of options before they make *any* decision; conventional and at-home funeral alike.

25

26  _____

[51] Board of Governors of the Federal Reserve System, *Report on the Economic Well-Being of U.S. Households in 2020*, at 21 (2021), available at https://www.federalreserve.gov/publications/files/2020-report-economic-well-being-us-households-202105.pdf.

27

28  [52] *See* Haneman, *supra* note 28 at 429-30.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

**C.** **Death doulas should not be subject to the same regulations as a conventional funeral home or funeral director.**

Death doulas should not be regulated as funeral directors for several reasons. First, death doulas are laypeople who do not provide funeral director services. Second, regulating death doulas as funeral directors will force most out of existence, undermining patient-directed care and reduce options for end-of-life care. Third, the strict regulation of death doulas as funeral directors violates death doulas' rights to provide such information and the rights of patients and their loved ones to receive it.

        1.    **Death doulas do not offer services that touch the operations of funeral homes or funeral directors and are thus outside the scope of services that legislators intended to regulate.**

California Business and Professions Code Section 7622.2 states "A person shall not open or maintain a place or establishment at which to engage in or conduct, or hold himself, herself, or itself out as engaging in or conducting, the activities of a funeral director without a license." Cal. Bus. & Prof. Code § 7622.2 (West). Further, California Business and Professions Code Section 7601.1 states that "Protection of the public shall be the highest priority for the Cemetery and Funeral Bureau in exercising its licensing, regulatory, and disciplinary functions" and that "[w]henever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." *Id.* § 7601.1 (West).

As discussed previously in Section III.2.B, a key part of a funeral director's responsibilities include confirming signs of death, obtaining death certificates, and transporting, disinfecting, embalming, and disposing of corpses through either burial or cremation.[53] Carrying out these responsibilities involves the exercise of technical skill. For example, the embalming process consists of making incisions in a corpse, removing the blood and bodily fluids, and replacing those fluids with disinfecting solutions such as formaldehyde.[54] It also involves handling potential disease vectors, as blood-borne viruses can be transmitted by coming into

---

[53] Bureau of Labor Statistics, *supra* note 48.

[54] Erich Brenner, *Human body preservation – old and new techniques*, 224 J. Anatomy, 316, 319 (2014), available at https://doi.org/10.1111/joa.12160.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1   contact with the blood or bodily fluids of another—a fundamental part of the embalming

2   process.[55] Given the nature of their services and their proximity to potential disease vectors,

3   regulation of funeral directors is appropriate to protect the public health and safety.

4        Moreover, regulations imposed on funeral homes and funeral directors were responsive to

5   the funeral home industry's history of exploiting vulnerable consumers. For example, in the

6   1980's, the Federal Trade Commission enacted the "Funeral Rule"—regulations intended to curb

7   deceptive and unfair pricing practices engaged in by funeral providers. *St. Joseph v. Castille*, 712

8   F.3d 215, 218 (5th Cir. 2013). These practices included failing to disclose price information and

9   "bundling" products and services to force consumers into buying products and services that they

10  did not need. *Id.* The Funeral Rule now requires funeral directors to provide consumers with

11  itemized price lists so that they are no longer forced into buying such services. *Id.* And in 2013,

12  California went a step further by enacting California Business and Professions Code § 7685, a

13  law that requires funeral directors to publish prices on their websites to ensure fairness and

14  accuracy.[56]

15        Unlike funeral directors, however, death doulas are laypeople who do not offer the

16  services of funeral homes and funeral directors.[57] Nor do they handle corpses to the same intimate

17  and invasive degree as funeral directors.[58] They do not offer embalming services, confirm signs

18  of death, or obtain death certificates. Rather, death doulas provide emotional, spiritual, and

19  practical support as well as education about the dying process so that individuals at the end of life

20  feel empowered to make decisions about their care.[59] And while death doulas may sometimes

21  interact with corpses as part of at-home funerals, these interactions do not expose them to

22

23  [55] Nelson Marlborough District Health Board, *The Infectious Hazards of Dead Bodies* (September 28, 2020), available at https://www.nmdhb.govt.nz/dmsdocument/61-the-infectious-hazards-of-dead-bodies ("Hepatitis B and C

24  viruses, and HIV pose a particular risk for those in contact with the blood of the deceased. [E]mbalmers, emergency service workers, and forensic scientists are the occupations most at risk.").

25  [56] Cal. Bus. & Prof. Code § 7685 (West); *Licensed funeral establishments: price list: Internet posting, Hearing on S.B. 658 before the S. Comm. on Bus., Prof., and Econ. Dev.*, 2011 Leg. (2011), available at

26  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201120120SB658#.

27  [57] *See* Krawczyk, *supra* note 2 at 1.

28  [58] *See id.* at 7.

    [59] *See id.*

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1    potential disease vectors since corpses do not generally pose a public health risk.[60] As such, a

2    death doula's services do not threaten the public health and safety, and consequently do not

3    undermine the legislature's intent in protecting consumers in this regard.

4         Nor do death doulas pose a threat to consumer protection. Unlike funeral directors, most

5    death doulas work on a volunteer or donation basis.[61] Thus, unlike funeral directors, death doulas

6    do not have a financial incentive to withhold information from patients and their relatives. On the

7    contrary, death doulas further the interest of consumer protection by providing patients with

8    information about end-of-life services in a transparent manner, which allows patients and their

9    relatives to make informed decisions about after-death care.[62] Death doula services, therefore, do

10   not threaten consumer protection and do not undermine the legislature's intent in protecting the

11   public.

12        Because death doulas do not implicate either of the concerns that motivated regulating

13   funeral homes and funeral directors, they should not be regulated in the same manner.

14                    2.    **Regulation of death doulas will severely restrict their ability to provide
                            information about end-of-life options and will hurt patients.**

15

16        Strict regulation of death doulas as funeral directors will prevent most from offering their

17   services at all, undermining patient-directed care. Complying with the regulations that govern

18   funeral directors in California is expensive. A funeral director must obtain an associate degree, or

19   equivalent, and must pass an exam that tests 1) recognizing the signs of death, 2) the manner in

20   which death may be determined, 3) the laws governing the preparation, burial, disposal, and

21   shipment of human remains, and 4) local health and sanitary ordinances and regulations

22   governing funeral directing and embalming. Cal. Bus. & Prof. Code § 7622 (West). A funeral

23   director may only work at a licensed funeral establishment. *Id.* § 7619.3. And to be a licensed

24

25   [60] Webster, *supra* note 36 at 129; *see also Risks posed by dead bodies after disasters*, World Health Organization
     (February 6, 2013), available at https://www.who.int/publications/m/item/risks-posed-by-dead-bodies-after-disasters
26   ("Human remains only pose a substantial risk to health in a few special cases, such as deaths from cholera or
     haemorrhagic fevers.")

27   [61] *See* Ellin*, supra* note 17.

28   [62] *See* Haneman, *supra* note 28 at 406-07, 418-19.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1  funeral establishment, one must maintain a facility containing, at a minimum, a suitable room for

2  storing and embalming human remains. *Id.* § 7616.

3       Most death doulas operate on a volunteer basis or charge very modest fees. Because of

4  this, many have very small budgets and would be financially unable to comply with these

5  requirements. Full Circle of Living and Dying, for example, operates on a yearly budget of only

6  $11,000. Declaration of Bonnie "Akhila" Murphy ("Akhila Decl.") ¶ 161. Regulating death

7  doulas as funeral directors will, therefore, decrease the availability of emotional and practical

8  support as death doulas are forced out of practice. Accordingly, dying individuals and their loved

9  ones will be forced to turn to traditional healthcare workers that are ill-equipped to provide the

10  full range of support that patients at the end of life require and to conventional funeral homes and

11  funeral directors who offer limited services and options.[63]

12       At the same time, regulating death doulas as funeral directors will reduce the availability

13  of information about the full range of after-death options to individuals. This may not have been

14  an issue when conventional funerals were the norm, but individual after-death preferences have

15  changed and continue to change.[64] Today, a growing number of individuals want access to

16  conventional funeral alternatives for emotional, cultural, spiritual, and environmental reasons.[65] A

17  lack of information about the full range of after-death options will impair an individual's ability

18  to select the after-death option that best fits their values and make it more difficult for individuals

19  to make empowered and informed decisions about what happens to their body after death.[66]

20  Doing so will undermine informed consent and patient-directed care by depriving individuals of

21  the opportunity to decide the after-death option that is best aligned with their individual needs and

22  beliefs.

23       Relatedly, regulating death doulas as funeral directors will reduce the accessibility of

24  information about affordable after-death options. This will disproportionately affect the

25

26  [63] *See* Woo, et al., *supra* note 30 at 369; *see also* Bureau of Labor Statistics, *supra* note 48.

27  [64] Tanya D. Marsh, *Rethinking the Law of the Dead*, 48 Wake Forest L. Rev. 1327, 1340 (2013).

    [65] *Id.*

28  [66] *See* Woo, et al., *supra* note 30 at 368.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

disenfranchised because they are often most dependent on funeral directors for advice after the death of a loved one.[67] To pay for the expensive funerals these vulnerable individuals are advised that they need, disenfranchised Americans must often turn to loans with expensive interest rates.[68] This outcome exacerbates their precarious financial situation and perpetuates inequality in America.[69] Depriving consumers of access to information that death doulas provide about affordable funeral alternatives will further encourage these practices.

3. **Death doulas have a First Amendment right to provide information about end-of-life options and individuals have a right to receive this information.**

The First Amendment, as applied to the States via the Fourteenth Amendment, prohibits the government from passing laws that restrict speech. *Nat'l Inst. of Fam. and Life Advoc. v. Becerra*, 138. S. Ct. 2361, 2371 (2018). A law that targets speech based on its content is presumptively unconstitutional unless the government shows that the law is "narrowly tailored to serve compelling state interests." *Id.*

As a threshold matter, death doula speech is subject to First Amendment protection because it is constitutionally protected "pure speech." Death doulas educate their clients about after-death care services so that they can make fully informed decisions as they near death that align with their personal values, beliefs, and desires. Part of this education includes offering information about services that compete with conventional funeral home services like at-home funerals, green burials, and cremations. Providing this education involves disseminating factual information to clients both verbally and in writing, an activity that the Supreme Court has recognized is protected by the First Amendment. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (recognizing that "if the acts of disclosing and publishing information do not constitute speech, it is hard to imagine what does fall within that category . . . ." (some internal quotation marks omitted); *see also Lovell v. City of Griffin, Ga.*, 303 U.S. 444, 452 (1938) (recognizing that "[the] liberty of circulating [information] is as essential … as [the] liberty of publishing [it].")

---

[67] *See* Haneman, *supra* note 18 at 406-07, 412-13.

[68] *Id.* at 402-03.

[69] *See id.* at 416.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

1   And, a death doula's clients have a right to receive this information. *See Martin v. City of*

2   *Struthers, Ohio*, 319 U.S. 141, 143 (1943) (holding that the First Amendment protects the right to

3   distribute *and* receive literature); *see also Stanley v. Georgia*, 394 U.S. 557, 564 (recognizing that

4   "the Constitution protects the right to receive information and ideas.").

5        To the extent that the information death doulas provide is factual and not intended to

6   solicit or advertise a commercial transaction, their speech is not commercial in nature. *See Bolger*

7   *v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983) (explaining that commercial speech is

8   "speech which does no more than propose a commercial transaction") (some internal quotations

9   omitted). But even if this death doula speech is considered commercial in nature, it is still entitled

10  to First Amendment protection. The Supreme Court has long held that commercial speech enjoys

11  First Amendment protection if it concerns lawful activity and is not misleading. *Central Hudson*

12  *Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980) (holding that "for

13  commercial speech to come under [First Amendment] protection, it at least must concern lawful

14  activity and not be misleading."). Death doula speech is protected, even if commercial in nature,

15  because it concerns lawful activity; namely, disseminating information about legal, conventional

16  funeral alternatives like at-home funerals.[70] It is also not misleading because death doulas do not

17  represent themselves as funeral directors or medical professionals. On the contrary, they represent

18  themselves as laypeople who have no specialized training or skills.[71]

19        Moreover, requiring that death doulas be licensed as funeral directors simply because they

20  provide information about affordable funeral alternatives is a content-based restriction on speech.

21  *See Nat'l Inst. of Fam. and Life Advoc.*, 138 S. Ct. at 2371 (stating that content-based

22  discriminations "target speech based on its communicative content.") But the government does

23  not have a compelling interest to justify this content-based restriction. First, death doulas do not

24  provide services that undermine public health and safety since, unlike funeral directors, they do

25  not offer embalming services and do not handle corpses to the same invasive extent.[72] Second,

---

70 *See* Krawczyk, *supra* note 2 at 7.

71 *See id.* at 1.

72 *See* Krawczyk, *supra* note 2 at 7.

BRIEF OF AMICUS CURIAE
COMPASSION & CHOICES
CASE NO. 2:20-CV-01306-KJM-KJN

death doulas do not pose a risk to consumer protection since many of them work on a volunteer or donation basis.[73] Even if the government had a compelling interest in treating death doulas as funeral directors, requiring *every* death doula to be licensed as one is not the least restrictive means of achieving the state's alleged compelling purpose. Treating death doulas as funeral directors would require them to invest in facilities to store and embalm corpses, even though they do not offer these services—the cost of such a facility alone would force most death doulas out of practice. It would also prohibit death doulas from providing *any* information or services (even information and services that have no bearing on the government's alleged public safety or consumer protection interests) without being licensed.

That death doulas view themselves as "professionals" does not diminish their First Amendment right to inform their clients. The Supreme Court has held that professionals have equally as strong First Amendment protections in their communications as non-professionals. In *National Institute of Family and Life*, pro-life organizations challenged the California Reproductive Freedom, Accountability, Comprehensive Care, and Transparency Act arguing that it violated the First Amendment. 138 S. Ct. at 2370. The Act required pro-life centers in California to post flyers in their clinics notifying women of free or low-cost abortion services as well as contact information for obtaining those services. *Id.* at 2369. The Ninth Circuit held that the organizations' speech enjoyed lessened First Amendment protection because it was professional speech. *Id.* at 2371. The Supreme Court disagreed, stressing that speech is not subject to lesser protection merely because it is "professional." *Id.* at 2371-72. Given this holding, it is clear that death doula speech is subject to the same First Amendment protection as non-professionals even if their communications can be classified as professional.

Because regulating death doulas as funeral directors would infringe on their First Amendment rights and the rights of their clients, they should not be regulated as such.

---

[73] Ellin, *supra* note 17.

1   **IV.**      <u>**CONCLUSION**</u>

2         For the foregoing reasons, Plaintiffs' summary judgment motion should be granted.

3

4         Dated:  November 19, 2021

5                                              JOHN KAPPOS
                                             O'MELVENY & MYERS LLP
6

7
                                             By:      */s/ John Kappos*
8                                                     John Kappos

9                                            Attorneys for *Amicus Curiae*
                                             Compassion & Choices
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRIEF OF AMICUS CURIAE
                                                       COMPASSION & CHOICES
                                                       CASE NO. 2:20-CV-01306-KJM-KJN