**INSTITUTE FOR JUSTICE**
Jeffrey Rowes (admitted *pro hac vice*)
816 Congress Ave., Suite 960
Austin, TX 78701
(512) 480-5936
jrowes@ij.org

Benjamin A. Field (admitted *pro hac vice*)
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
bfield@ij.org

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Thomas V. Loran III (CA Bar No. 95255)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
(415) 983-1865
thomas.loran@pillsburylaw.com

Derek M. Mayor (CA Bar No. 307171)
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4703
derek.mayor@pillsburylaw.com

*Attorneys for Plaintiffs Full Circle of Living
and Dying; Bonnie "Akhila" Murphy; Donna
Peizer; Pamela Yazell; Kay Hogan; Janaia
Donaldson; and Robin Mallgren*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULL CIRCLE OF LIVING AND DYING, et al., | No. 2:20-cv-01306-KJM-KJN |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| GINA SANCHEZ in her official capacity as Bureau Chief of the Cemetery and Funeral Bureau, et al., | Date:        February 11, 2022<br>Time:        10:00 a.m.<br>Courtroom:  3, 15th Floor<br>Judge:      Hon. Kimberley J. Mueller |
| Defendants. | |

**INTRODUCTION**

The Bureau's[1] response fails to counter Plaintiffs' case for summary judgment. First, Plaintiffs explain below that there are no material factual disputes that should preclude summary judgment. Next, Plaintiffs demonstrate in Part I that the Bureau's standing objection to the First Amendment claim about advice has no more merit now than it did when this Court rejected it at the preliminary-injunction stage. In Part II, Plaintiffs show that the Bureau's public-health argument against the substantive due-process claim is essentially the same public-health argument that the government made—and the Fifth Circuit explicitly rejected—in *St. Joseph Abbey*. Last, because the Bureau cannot apply the funeral statutes to restrict Plaintiffs' speech or conduct, there is no basis to regulate their truthful advertising about what they may lawfully say and do (Part III).

**THERE ARE NO TRULY DISPUTED MATERIAL FACTS**

The Bureau's fact response has "undisputed" and "disputed" sections. Plaintiffs briefly address each to the extent clarification is warranted. Plaintiffs also explain why various boilerplate objections to Plaintiffs' statement of undisputed material facts do not matter. The big picture for the Court is that there aren't any truly disputed material facts.

**"Undisputed Facts"**: The Bureau asserts that "[d]ecomposing human bodies can present a serious risk to public health and safety." ECF No. 42 ("Defs.' MSJ Resp.") at 2; *see also* ECF No. 42-2 ("Defs.' Supp. SUMF") ¶ 40. This statement is true, but only in the trivial sense that many things "can" be a "serious risk to public health and safety" in unusual circumstances. Attending an elementary school play, for example, "can" be a "serious risk to public health and safety" at the height of a COVID outbreak. But it doesn't follow that school plays are dangerous *generally*. We know that because school plays are perfectly legal for lay people to hold in normal times and unsafe only in abnormal times when a specific public-health directive (such as a stay-at-home order) is in effect.

So too with home funerals. Like school plays, laypeople are allowed to hold home funerals in California. They do not need government permission, licenses, inspections, or the presence of

---

[1] This reply refers to the Defendants collectively as "the Bureau."

public-health officials (and certainly not licensed funeral directors). This is because—under normal circumstances—decomposing human remains do not in fact present any real risk to public health and safety. Indeed, California law requires burial or cremation only in a "reasonable" time. CAL. HEALTH & SAFETY CODE § 7103(a). To be sure, Plaintiffs concede that it's hypothetically possible that a public-health official could quarantine the remains of a specific person, which would prevent a home funeral. But that doesn't alter the fact that the default rule in California is that home funerals are perfectly safe; the fact that the Bureau has no evidence of a home funeral ever causing any problem; or the fact that an otherwise safe and lawful home funeral cannot possibly *become* a danger to the public simply because end-of-life doulas are present to offer practical advice and assistance.

**"Disputed Facts"**: The Bureau disputes that it "instructed the Doula Plaintiffs to 'hire an attorney to tell them why the Bureau issued the Citation.'" Defs.' MSJ Resp. at 4. The Bureau asserts that "the statement ascribed to Bureau staff is a false and misleading interpretation of the Doula Plaintiffs' testimony from their own declarations." *Id.* But the declaration from Akhila Murphy that the Bureau references explains that "Bureau staff could not or would not identify any specific statutory or administrative provisions Full Circle and its end-of-life doulas had violated," and that "Bureau staff suggested that if Full Circle, Donna, or I wanted to understand what regulations we were violating and how to comply, we should obtain legal counsel to help revise the website." ECF No. 35-3 ¶¶ 134, 141; *see also id.* ¶ 142 (explaining that Bureau staff told Akhila "you must seek legal counsel or contact a licensed funeral director if you have any questions"). The bottom line is that the Bureau told Full Circle that the services offered on the website required licensure and refused to explain what precisely the doulas could do and not do without a license.

**Response to the Bureau's SUMF Objections**: For the most part, the Bureau's responses to Plaintiffs' Statement of Undisputed Material Facts do not dispute the facts described by Plaintiffs. *See generally* ECF No. 42-1 ("Defs.' SUMF Resp."). Instead, the responses consist mainly of boilerplate and meritless objections. To address just the most common: The Bureau objects to many facts on the grounds of materiality or relevance, but those are questions of law to be decided by the Court depending on how it resolves the cross-motions. *See id.* ¶¶ 5, 8–9, 11, 13,

-3-

18–21, 23, 27–30, 32, 68, 72, 74–89, 91–92, 100. The Bureau objects to Plaintiff Akhila Murphy's testimony about what end-of-life doulas do, without any substantive explanation of why she is not competent to testify about her extensive personal experiences working with end-of-life doulas. *See id.* ¶¶ 1–5, 8–11, 23, 25–29, 33. The Bureau also accuses Plaintiffs of "attempts to mislead the Court" where all Plaintiffs did was accurately summarize declaration evidence about what happened at the informal conference. *See id.* ¶¶ 59, 66; *supra* p. 3. Finally, in several instances where Plaintiffs relied on deposition testimony, the Bureau does not dispute the proposed fact but instead objects that the cited exhibit with the deposition excerpt does not contain relevant testimony. *See* Defs.' SUMF Resp. ¶¶ 45, 93–96. The Bureau is mistaken and appears to be confused by Plaintiffs' following this Court's order, which directed the parties to internally paginate multi-page exhibits and refer to those exhibits by that internal pagination. *See* ECF No. 3-1 at 4. Plaintiffs explained this pagination convention in their Statement, *see* ECF No. 35-2 ("Pls.' SUMF") at 4 n.1, and the relevant testimony is where the citations say it is.

## I. The Bureau Does Not Defend the Constitutionality of Requiring Full Circle to Have a License to Speak, So Full Circle Is Entitled to Judgment on Count I.

Parts I and II of the Bureau's response make the same point: Plaintiffs supposedly have no First Amendment claim about restrictions on individualized advice because the November 2019 Citation did not explicitly prohibit such advice. Rather, the Citation "only instructed Full Circle to stop advertising and providing services it was not licensed to provide." Defs.' MSJ Resp. at 5. The Bureau insists that the Citation's command "to immediately discontinue advertising and operating as a funeral establishment" should be read as though it said "immediately discontinue advertising and operating as a funeral establishment, *except for the things you're doing that involve protected speech because it is not our intention to restrict protected speech*." Based on this, the Bureau argues that the First Amendment claim about individualized advice is a non-issue because the "Bureau has not issued any enforcement orders to Full Circle or any other Plaintiff that forbid Plaintiffs from providing individualized advice about death planning and home funerals." *Id.* at 6.

The Bureau never comes out and says so, but it's really making a standing argument. It's saying that Plaintiffs misinterpreted the Citation, imagined a First Amendment restriction that

1    doesn't exist, and sued to remedy an injury that was never inflicted. But this standing argument

2    fails now for the same reasons that it failed last year when this Court rejected it and granted the

3    preliminary injunction (Section A, below). Second, this sort of gamesmanship with free speech

4    impermissibly forces speakers to make guesses about what they may and may not say. This is what

5    Plaintiffs meant by vagueness in their opening brief, and they did not, as the Bureau contends, try

6    to litigate an unpled claim (Section B). Finally, the Bureau does not even attempt to carry its burden

7    under heightened First Amendment scrutiny, so Plaintiffs are entitled to summary judgment

8    (Section C).

9        **A.  The Bureau's stealth standing objection is just as wrong now as at the preliminary-injunction stage.**

10       As noted, the Bureau does not argue that it prevails on the merits of Plaintiffs' First

11   Amendment claim about restrictions on individualized advice. Instead, it argues that the claim

12   doesn't exist because no such restrictions exist, saying that the Citation didn't specifically address

13   end-of-life advising. *See* Defs.' MSJ Resp. at 6–7. Without saying so, the Bureau is making the

14   same standing argument it made unsuccessfully at the preliminary-injunction stage. Plaintiffs

15   responded at length to this gambit then and again in response to the Bureau's summary-judgment

16   memorandum now. *See* ECF No. 41 ("Pls.' MSJ Resp.") at 8–12. Plaintiffs will not belabor that

17   latter response here, but the Bureau's stealth standing argument fails for three reasons.

18       **First**, as this Court already recognized, the Citation's blanket order to stop "operating as a

19   funeral establishment until a license is issued" broadly reached *all* of Full Circle's activities, which

20   mostly comprise speech. *See id.* at 8; *see also* ECF No. 23 at 5 (this Court's preliminary-injunction

21   order "declin[ing] to construe the notice [of citation] narrowly as the Bureau urges"). In a nutshell,

22   when government officials order ordinary citizens to stop doing *everything*, that order necessarily

23   includes speech.

24       **Second**, the Citation is not the be-all-and-end-all of this suit. It is just one piece of evidence

25   of the Bureau's enforcement practices that supports Plaintiffs' injunctive and declaratory relief

26   against all future Bureau speech enforcement against Full Circle. The Bureau is simply wrong to

27   think that parsing the wording of the Citation controls the free-speech claim here.

28

**Third**, the investigation record, the deposition testimony of Bureau enforcement officials, and the Bureau's own representations during summary-judgment briefing all show that the Bureau believes that individualized home-funeral advice requires a license. Pls.' MSJ Resp. 8–9. In particular, there is substantial evidence that if the Bureau investigated Full Circle again, it would find that its doulas' guidance during home funerals, their individualized consultations to develop end-of-life plans before death, and even their public educational events about end-of-life planning would require a license. Pls.' MSJ Resp. at 9–12; *see also* Pls.' SUMF ¶¶ 45, 50, 52–53, 69–71, 86–90, 93–98.[2] And the threats did not stop following the preliminary injunction, as the Bureau has even announced a new (and unconstitutional) speech restriction during summary-judgment briefing by saying it wants to ban Plaintiffs from calling themselves "home funeral guides" when they offer home-funeral guidance. Pls.' MSJ Resp. at 16–17; *see also* Defs.' SUMF Resp. ¶¶ 34–35 (reiterating desire to restrict use of "home funeral guide" term). Put simply, there are ample reasons Plaintiffs face a "credible threat of prosecution" for their speech, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), and they require this Court's protection to safeguard their First Amendment rights. *See also* Pls.' MSJ Resp. at 18–19.[3]

---

[2] The Bureau complains that the specific section of Plaintiffs' memorandum applying the strict-scrutiny framework did not discuss the evidence for Plaintiffs' fear of enforcement. *See* Defs.' MSJ Resp. at 7. That's because it's not relevant to the strict-scrutiny analysis, and is instead a standing issue. Ample evidence is detailed elsewhere in Plaintiffs' summary-judgment memorandum and their response to the Bureau's summary-judgment motion. *See, e.g.*, ECF No. 35-1 ("Pls.' MSJ Mem.") at 9–12, 18–19; Pls.' MSJ Resp. at 8–12, 18–19.

[3] Even if the Bureau were consistent in this litigation in announcing a policy that "providing individualized advice about death planning and home funerals . . . does not require licensure," Defs.' MSJ Resp. at 6, it would not change Plaintiffs' entitlement to relief. Voluntary cessation moots a case only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see also, e.g.*, *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) (no mootness where "new policy regarding enforcement . . . could be easily abandoned or altered in the future"). The Bureau's most recent strategic reinterpretation of its enforcement authority in litigation is hardly sufficient to make it "absolutely clear" that Plaintiffs' speech is safe, especially when weighed against inconsistent statements in the Bureau's summary-judgment briefing, its prior enforcement history against Full Circle, and its officials' deposition testimony that speech does require a license.

1

2

**B. Plaintiffs are not trying to litigate an unpled vagueness claim—they are explaining that the Bureau's reading of its own Citation puts speakers in the position of having to make guesses about what they may and may not say.**

3

4

5

6

7

8

9

10

11

12

13

In their opening brief, Plaintiffs discussed how the Bureau's enforcement practices (as shown by the Citation and abundant other evidence) put speakers in the untenable position of having to guess about what they may and may not legally say. Pls.' MSJ Mem. at 17–19. Plaintiffs raised this to head off exactly the strategy the Bureau has attempted before and is now attempting again: Exploiting that vagueness to assert that the Bureau, in fact, never wished to regulate Full Circle's end-of-life and home-funeral advice in the first place. *See* Defs.' MSJ Resp. at 5–7. The Bureau misconstrues Plaintiffs' vagueness point as "a new claim for relief." *Id.* at 13. It isn't. Plaintiffs are not making a Fourteenth Amendment vagueness challenge to the facial validity of any statute or regulation.[4] Rather, Plaintiffs want exactly the relief they asked for in Count I: injunctive and declaratory protection of their individualized advice. ECF No. 1 at 25–26 ¶¶ 232–34, 29 ¶¶ A–B.

14

15

16

17

18

19

20

21

22

23

24

25

26

Without a permanent injunction, Plaintiffs' First Amendment rights will be in just as precarious a state as before this Court issued a preliminary injunction. The Bureau makes no argument to contradict the key points Plaintiffs raised about vagueness. The Bureau does not (and cannot) dispute that the Citation's text provided no way to know what the Bureau thought Full Circle was doing wrong, or that such vagueness is Bureau policy for unlicensed-activity citations and so is likely what Full Circle will get again if it receives another citation. *See* Pls.' MSJ Mem. at 18. Nor does the Bureau dispute that Field Representative Glenn Miller—the front-line enforcement official responsible for the region of California where Plaintiffs are located—thought that individualized advice *did* require a license and was never corrected by his superiors. *See id.* Nor did the Bureau try to reconcile his belief with his supervisors' vacillating statements that some types of advice may require a license depending on circumstances. *See id.* As for the informal conference where Plaintiffs Akhila Murphy and Donna Peizer unsuccessfully tried to get some clarity, the Bureau forthrightly acknowledges that those conferences are not supposed to give

27

28

---

[4] This is why Plaintiffs did not attack a specific statute or regulation for vagueness, and why the Bureau is wrong to suggest they should have. *See* Defs.' MSJ Resp. at 14.

-7-

1    guidance on "how to comply with the law." Defs.' MSJ Resp. at 15.

2          If this Court's preliminary injunction is not made permanent, Plaintiffs will be left with the

3    knowledge that they've faced enforcement in the past and that, in the course of two years of

4    administrative proceedings and litigation, the Bureau's views of what requires a license have only

5    become murkier. Plaintiffs simply cannot know what specific speech of theirs the Bureau will say

6    requires a license if this Court's injunction expires. The Bureau ought not be rewarded for making

7    it so difficult to know what speech it thinks is illegal.

8          **C.  Plaintiffs are entitled to summary judgment on Count I because the Bureau does not even attempt to carry its burden under heightened First Amendment scrutiny.**

9          The Bureau puts all of its eggs in one basket—it hopes the Court will simply refuse to

10   consider the First Amendment claim about advice on the merits. The Bureau makes no argument

11   in the alternative that it can survive First Amendment scrutiny. It does not contest that the

12   government must satisfy strict scrutiny to restrict Full Circle's individualized advising on end-of-

13   life planning and verbal guidance during home funerals. *Compare* Pls.' MSJ Mem. at 12–13 &

14   n.3, *with* Defs.' MSJ Resp. at 6–7; *see also, e.g.*, *Hines v. Quillivan*, No. 1:18-cv-155, slip op. at

15   4–6 (S.D. Tex. Dec. 9, 2021) (decision yesterday that strict scrutiny applies to individualized

16   advice, in veterinary context). Nor does the Bureau propose a compelling government interest to

17   justify speech restrictions or argue that restricting the doulas' speech is the least restrictive means

18   to serve any compelling interest. *See* Defs.' MSJ Resp. at 6–7. Because the Bureau has not even

19   attempted to meet its heavy burden, Plaintiffs are entitled to summary judgment on their First

20   Amendment claim for their individualized advice (Count I).

21   **II.  The Bureau's Conclusory Response to Plaintiffs' Due-Process Claim Is Exactly the Kind of Reasoning That *St. Joseph Abbey* Rejected.**

22          Plaintiffs' substantive due process claim is about practical, hands-on assistance during a

23   home funeral. Doulas may help families perform simple tasks that are lawful for laypeople to do

24   but which are usually unfamiliar. These activities include purchasing dry ice at a grocery store and

25   helping place it under remains to slow decomposition; moving a deceased loved one from one

26   room to another; and undressing, washing, and dressing remains. Relying heavily on *St. Joseph*

27   *Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013), which struck down funeral licensure for monks

28

-8-

1    selling handmade caskets, Plaintiffs argue that there is no rational basis for requiring Full Circle

2    and its doulas to become licensed to provide this practical advice about perfectly lawful conduct.

3    Pls.' MSJ Mem. at 20–23.

4         The Bureau builds its response around a single proposition: "Decomposing human remains

5    can present a danger to public health, safety, and welfare." Defs' MSJ Resp. at 18. This fact, the

6    Bureau contends, is decisive: "[T]his case . . . involv[es] the handling of human remains . . .

7    [w]hereas the dispute in *St. Joseph Abbey* involved a statute governing the intra-state sale of

8    caskets." *Id.* This is supposedly crucial because "[c]onstructing wooden caskets is not analogous

9    to washing, handling or transporting human remains." *Id.* at 18–19. Moreover, according to the

10   Bureau, "Louisiana does not regulate the use of a casket or other container for burial . . . [w]hereas

11   in this case California strictly regulates the handling of human remains." *Id.* at 19.

12        But the Bureau's argument is unpersuasive because pointing out factual differences

13   between *St. Joseph Abbey* and this case is not the same as explaining why those differences should

14   matter. True, this case does involve handling human remains within the context of a home funeral.

15   But California does not "strictly regulate" that. In fact, it doesn't regulate it at all. As the Bureau

16   concedes, home funerals are lawful and all of the home-funeral activities the doulas want to do are

17   legal for laypeople to perform. *See* Defs.' MSJ Resp. at 18; *see also* Defs.' SUMF Resp. ¶ 11 (not

18   disputing that home funerals are legal in California and in all 50 states); ECF No. 35-4 Ex. A at 2

19   (Bureau brochure explaining home funerals are legal). If human remains were in fact generally

20   dangerous, then California law would treat them as such. But it doesn't.

21        With this understood, it becomes clear that the Bureau is making the exact same health-

22   and-safety argument that the Fifth Circuit rejected in *St. Joseph Abbey*. There, the court recognized

23   that caskets hold human remains. That's the point of caskets. And, if remains are generally

24   dangerous and caskets are supposed to contain this danger, then perhaps there is a public-health

25   rationale for allowing only funeral directors to sell caskets. But the Fifth Circuit rejected any notion

26   that public safety required monks to be licensed funeral directors to sell caskets because "this

27   purported rationale for the challenged law elides the realities of Louisiana's regulation of caskets

28   and burials." 712 F.3d at 226. Reality, as established by the record, was that "Louisiana does not

even require a casket for burial, does not impose requirements for their construction or design, does not require a casket to be sealed before burial, and does not require funeral directors to have any special expertise in caskets." *Id.* That is the same reality as here. California does not regulate home funerals at all, and thus the Bureau cannot prevail here by invoking the purely imaginary danger of human remains being present at a home funeral.

Indeed, the irrationality here is even starker than in *St. Joseph Abbey*. Given that laypeople can hold home funerals themselves without any permission, licenses, or the presence of a funeral director, to find for the Bureau would require this Court to accept the notion that otherwise safe and lawful home funerals *become* dangerous when a doula is present. That is nonsensical, and whatever deference the government is owed when the issue is debatable, this Court is not required to accept the patently irrational. *St. Joseph Abbey*, 712 F.3d at 223, 226 ("a hypothetical rationale, even post hoc, cannot be fantasy"; the government isn't entitled to "judicial blindness to the history of a challenged rule or the context of its adoption," and courts need not accept "nonsensical explanations for regulation").

## III. The Bureau Effectively Concedes that Plaintiffs Should Prevail on their Commercial-Speech Claim to the Extent the Advertised Speech or Conduct Is Protected.

Consistent with its summary-judgment memorandum, the Bureau offers no justification for restricting commercial speech that advertises services Plaintiffs can lawfully provide without a license. It argues only that it can regulate advertisement of activity that requires a license. *See, e.g.*, Defs.' MSJ Resp. at 8 (no First Amendment protection for "advertising *illegal* activity"), 10 ("substantial interest in stopping *unlicensed* activity"), 12 (Bureau "address[ing] the harm of Full Circle advertising services that it is *not licensed* to provide, and the misleading implication [Full Circle is] qualified to provide services that fall within the Act's *licensing* requirements") (all emphases added). Thus, to the extent Plaintiffs succeed through Count I and Count III in showing that the Bureau's licensure requirements cannot constitutionally be applied to their services, they are equally constitutionally entitled to advertise those services. *See* Pls.' MSJ Resp. at 14–16.

The Bureau does not contest that under heightened constitutional scrutiny, it is the government that bears the burden to prove speech restrictions are sufficiently necessary to advance

-10-

a substantial government interest. *See* Defs.' MSJ Resp. at 8 (describing *Central Hudson* test for commercial speech). Because the Bureau does not offer any arguments for restricting advertising for services that do not require a license, it cannot meet its burden for any such advertising. The closest the Bureau comes is to say it doesn't *need* evidence of actual consumer harm to justify a commercial-speech restriction. *See id.* at 16–17. True enough, but the Bureau doesn't dispute that it lacks any such evidence, and because it has put forward no independent evidence that harm *will* arise, it has no basis to regulate advertisement of services outside its licensing authority.

## CONCLUSION

Summary judgment should be granted to Plaintiffs on all counts, and the Bureau's cross-motion should be denied in its entirety.

Dated: December 10, 2021.                Respectfully submitted,

/s/ Jeff Rowes

| | |
|---|---|
| Derek M. Mayor (CA Bar No. 307171) | Jeff Rowes* (TX Bar No. 24104956) |
| PILLSBURY WINTHROP SHAW PITTMAN LLP | INSTITUTE FOR JUSTICE |
| 500 Capitol Mall, Suite 1800 | 816 Congress Ave., Suite 960 |
| Sacramento, CA 95814 | Austin, TX 78701 |
| (916) 329-4703 | (512) 480-5936 |
| derek.mayor@pillsburylaw.com | jrowes@ij.org |
| | |
| Thomas V. Loran III (CA Bar No. 95255) | Benjamin A. Field* (NY Bar No. 5430129) |
| PILLSBURY WINTHROP SHAW PITTMAN LLP | INSTITUTE FOR JUSTICE |
| Four Embarcadero Center, 22nd Floor | 901 N. Glebe Rd., Suite 900 |
| San Francisco, CA 94111 | Arlington, VA 22203 |
| (415) 983-1865 | (703) 682-9320 |
| thomas.loran@pillsburylaw.com | bfield@ij.org |

*Admitted *pro hac vice*

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Jeff Rowes
Jeff Rowes

*Attorney for Plaintiffs*

-11-