UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Full Circle of Living and Dying, et al.,

Plaintiffs,

v.

Gina Sanchez, in her official capacity as Bureau Chief of the Cemetery and Funeral Bureau, et al.,

Defendants.

No. 2:20-cv-01306-KJM-KJN

ORDER

Full Circle of Living and Dying and its doulas offer advice, counseling and other services to families and loved ones of those who are dying. For ease of reference, the court refers to the organization and its doulas as Full Circle, unless otherwise noted. Full Circle is not a licensed funeral home, and its doulas are not licensed funeral directors. In November 2019, defendant California Cemetery and Funeral Bureau (the Bureau) cited Full Circle for "advertising and operating as a funeral establishment" without a license to do so. The Bureau directed Full Circle to cease operating and advertising services until licensed. The Bureau issued a notice threatening fines and prosecution if Full Circle did not. Full Circle alleged this threat and the law on which the regulators rely violate their rights to freedom of speech under the First Amendment and substantive due process under the Fifth and Fourteenth Amendments. Four "family plaintiffs" who would like advice and guidance from Full Circle's doulas joined the lawsuit. On

December 28, 2020, this court granted plaintiffs' motion for preliminary injunction and denied defendants' motion to dismiss. Shortly thereafter, the Bureau withdrew its notice of citation. The parties now bring cross-motions for summary judgment. For the reasons below, the court **grants in part and denies in part** defendants' motion and **grants in part and denies in part** plaintiffs' motion.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed unless otherwise stated, and the court addresses evidentiary objections, if relevant, as they arise.

## A. California's Cemetery and Funeral Bureau and Act

Gina Sanchez serves as Bureau Chief of California's Cemetery and Funeral Bureau, which regulates the "death care industry" in California and issues citations against unlicensed people or organizations engaging in activity requiring licensure under the state's Cemetery and Funeral Act (the Act).[1] Decl. of Gina Sanchez ("Sanchez Decl.") ¶¶ 1–2, ECF No. 34-4. The Act is codified in sections 7600 through 7746 of the California Business and Professions Code. Bus. & Prof. Code §§ 7600–7746. The Bureau's "highest priority" is "[p]rotection of the public . . . ." *Id.* § 7601.1.

Section 7615 defines a licensed funeral director as a "person engaged in or conducting, or holding himself or herself out as engaged in any of the following":

> (a) [p]reparing for the transportation or burial or disposal, or directing and supervising for transportation or burial or disposal of human remains," (b) "[m]aintaining an establishment for the preparation for the transportation or disposition or for the care of

[1] The funeral industry is a widely regulated industry. Defendants request judicial notice of myriad "publications, statutes, and regulations related to the funeral industry in the United States, its territories, and the United Kingdom . . . ." Defs.' Request for Judicial Not. (RJN), ECF No. 34-3. Plaintiffs do not oppose this request.

A court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2); *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc). This includes "compacts, statutes, and regulations not included in the plaintiff's complaint." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1153 (9th Cir. 2017); *see also London Assurance v. Lufty*, 184 F.2d 40, 43 (9th Cir. 1950). The court **grants** defendants' request to take judicial notice of these documents.

> human remains," or (c) "[u]sing, in connection with his or her name . . . any [] title implying that he or she is engaged as a funeral director."

*Id.* § 7615(a)–(c). An applicant for a funeral director's license must have an associate's degree or higher, *id.* § 7619, and pass an examination covering

> (a) The signs of death.
> (b) The manner by which death may be determined.
> (c) The laws governing the preparation, burial and disposal of human remains, and the shipment of bodies dying from infectious or contagious diseases.
> (d) Local health and sanitary ordinances and regulations relating to funeral directing and embalming.

*Id.* § 7622. The content of the examination is available on the Cemetery and Funeral Bureau's website.[2] Separately, section 7619.3 bars funeral directors from performing their duties unless employed by or working as sole proprietor of a licensed funeral establishment. *Id.* § 7619.3.

Under § 7616 (a), a licensed funeral establishment is defined as

> a place of business conducted in a building . . . and devoted exclusively to those activities as are incident, convenient, or related to the preparation and arrangements, financial and otherwise, for the funeral, transportation, burial or other disposition of human remains . . . including, but not limited to, either . . . (1) A suitable room for the storage of human remains. (2) A preparation room equipped . . . for the preparation, sanitation, or embalming of human remains for burial or transportation.

*Id.* § 7616(a)(1)–(2). Under subsection (c), "no person shall operate or maintain or hold himself or herself out as operating or maintaining any of the facilities specified in paragraph (2) of subdivision (a), unless he or she is licensed as a funeral director." *Id.* However, it is possible to operate a licensed funeral establishment without being a licensed funeral director, so long as the establishment does nothing more than store human remains. *See generally id.* §§ 7600–7746

[2] Funeral Director Written Examination, Candidate Handbook, available at https://www.cfb.ca.gov/licensee/examhb.shtml (last accessed December 7, 2022). The court *sua sponte* takes judicial notice of this handbook, as it falls within the realm of "[p]ublic records and government documents available from reliable sources on the Internet," which includes websites run by governmental agencies. *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) (internal quotes and citations omitted).

Title 16 of the California Code of Regulations, section 1246, which the court refers to here simply as section 1246, authorizes the Bureau to "issue citations and fines against organizations and individuals who engage in unlicensed activity under the Act," including "advertising for which licensure . . . is required." Sanchez Decl. ¶ 9; Cal. Code Regs. tit. 16, § 1246.

The Cemetery and Funeral Bureau also issues the "Consumer Guide to Funeral & Cemetery Purchases." *See* State of California Dept. of Consumer Affairs Consumer Guide to Funeral & Cemetery Purchases.[3] In discussing "home death care," the Bureau recognizes "[t]he use of a funeral establishment and funeral director is not required by law when preparing a body for disposition. You can arrange for your body, or that of a loved one, to be cared for and prepared for disposition by family and friends at home." *Id.* at 7. If someone chooses home death care, that person must:

> File a properly completed Certificate of Death, signed by the attending physician or coroner, with the local registrar of births and deaths. Obtain a Permit for Disposition from the local registrar of births and deaths. Provide a casket or other suitable container. Make arrangements directly with the cemetery or crematory.

*Id.* The Bureau notes, "Human remains may be kept at home without embalming or refrigeration until disposition. Generally, decomposition will proceed more rapidly without refrigeration or embalming." *Id.* California's Health and Safety Code provides that bodies must be interred "within a reasonable time . . . ." Cal. Health & Safety Code § 7103.

**B. Full Circle and End-of-Life Doulas**

Full Circle is a non-profit organization operated by plaintiffs Bonnie "Akhila" Murphy and Donna Peizer, who are "end-of-life doulas." Defs.' Response to Pls.' Statement of Undisputed Material Facts (SUMF) ¶ 12, ECF No. 42-1. They help families perform "home funerals," which may include informal counseling before death for the dying and after death for the family; providing information about and assisting in organizing an end-of-life plan; and providing "hands-on assistance" in preparing a home funeral, including "moving, washing, and

[3] The Guide is available at https://www.cfb.ca.gov/consumer/consumer_guide.pdf (last accessed January 13, 2023); *see also* Exhibit A to Ms. Murphy's Declaration (Murphy Decl. Exs.), ECF No. 35-4.

dressing human remains," if requested by a family. *Id.* ¶¶ 17, 19, 23–24 ( Decl. of Bonnie "Akhila" Murphy ("Murphy Decl.), ECF No. 35-3)[4]; Pls.' Response to Defs.' SUMF ¶ 25, ECF No. 41-1. Full Circle has been offering these services since 2013. Compl. ¶ 56, ECF No. 1. Plaintiffs also include several past and potential clients who claim interests in having home funerals. *Id.* at 13[5]; Defs.' Response to Pls.' SUMF ¶ 16. These clients argue if Full Circle cannot offer its services, they will not be able to plan for end-of-life services as they are entitled to. Compl. ¶¶ 130–32. Most of Full Circle's doulas operate on a volunteer basis, and the organization's annual budget is less than $11,000. Defs.' Response to Pls.' SUMF ¶ 13. Generally, Full Circle charges a flat fee of between $150 and $300 for preparing end-of-life plans, suggests a fee of $35 to $50 for doula services prior to death, and asks for a "suggested donation" of between $500 and $2,000 for both individualized guidance and hands-on assistance at a home funeral. *Id.* ¶¶ 22, 31. However, Full Circle has also provided these services at no cost. *Id.* ¶ 32. In contrast, the median cost of a traditional adult funeral and burial exceeds $9,000.[6]

---

[4] Parties may object to the evidence cited by another party to prove the undisputed facts. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). But the evidentiary admission standard at summary judgment is lenient: A court may evaluate evidence in an inadmissible form if the evidentiary objections could be cured at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). In other words, "[a]dmissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Defendants object on various grounds to many of the facts based on Ms. Murphy's declaration and listed in plaintiffs' SUMF. *See, e.g.,* Defs.' Response to Pls. SUMF ¶¶ 1–5, 8–11, 13, 18–21, 23, 25–29, 32–33 (citing Fed. R. of Evid. 402, 403, 602, 701, and 702, as well as *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) for the proposition some facts are not "material facts"). The court does not rely on irrelevant or prejudicial evidence, so any objections on those grounds are overruled. Likewise, the court has not relied on any of Ms. Murphy's averments about events or facts for which she has no personal knowledge. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). These objections too are overruled.

[5] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[6] In early February 2022, this court granted leave for Compassion & Choices, "a non-profit organization whose mission is to improve care, expand options, and empower everyone to chart their end-of-life journey," to file an amicus brief in support of plaintiffs' motion. Motion for Leave to File Amicus Br., ECF No. 33; Br. of Amicus Curiae at 1, ECF No. 33-1; Order, ECF No. 46. The amicus brief details the unique services "death doulas" provide, explains how those

Generally, end-of-life doulas "do not provide medical treatment or advice, legal advice, or formal counseling or therapy." Br. of Amicus Curiae at 2–3 (citing Marian Krawczyk & Merilynne Rush, *Describing the end-of-life doula role and practices of care: perspectives from four countries*. 14 J. Palliative Care & Soc. Prac. 1, 1 (2020)). Full Circle's website states it provides "non-medical" support, and its doulas are "non-medical volunteers" who "do not dispense or endorse any medical advice." Murphy Decl. Exs. C & D, ECF No. 35-4. Full Circle's doulas do not administer medication, declare death, embalm remains, or provide transportation services. Defs.' Response to Pls.' SUMF ¶¶ 3, 10, 33; *see also* Br. of Amicus Curiae at 2–3 (observing similar limitations of death doulas' practices, generally). Full Circle's website includes multiple disclaimers that Full Circle "is not considered a funeral establishment," and its representatives acknowledge they are not licensed funeral directors. Defs.' Response to Pls.' SUMF ¶ 36; Murphy Decl. Exs. C, D & E.[7]

**C. The Bureau's Enforcement Actions Against Full Circle**

The conflict underlying this litigation took root in November 2019, when the Bureau issued a notice of citation and fine, which the court refers to here simply as the citation, against Full Circle. *See* Defs.' Response to Pls.' SUMF ¶ 54 (citing Murphy Decl. Ex. F). The citation stated, in part: "The Bureau's investigation revealed a violation of CCR section 1246, unlicensed activity, when Full Circle [] engaged in the activity of advertising as a funeral establishment when Bureau records reveal that no funeral establishment license has been issued to Full Circle []. Full Circle of Living and Dying advertises services on its website [] for which a funeral establishment license is required." Murphy Decl. Ex. F. Beyond identifying unlawful "unlicensed activity," the citation did not identify or explain what, if any, specific provisions of the Act or sections of the California Business and Professions Code Full Circle violated. *See generally id.* The notice

services are distinct from those provided by funeral homes or directors, and sets out arguments as to why death doulas should not be subject to the same regulations as funeral homes or directors. Br. of Amicus Curiae at 9. It also provides additional information regarding death doulas' impact on the funeral industry, including a citation to an empirical study, Victoria J. Haneman, *Funeral Poverty*, 55 U. Rich. L. Rev. 387 (2021). *Id*. at 7 n.28.

[7] The organization's website contains this disclaimer in red text at the bottom of every page. http://www.fullcirclelivingdyingcollective.com/ (last accessed Jan. 13, 2023).

directed Full Circle to "immediately discontinue advertising and operating as a funeral establishment until a license is issued by the Bureau," and threatened fines of up to $5,000. *Id*. The citation would "become a final order of the Bureau [in] 30 days . . .." *Id*.

The next month, Full Circle and the Bureau met informally to review the citation, when, according to Full Circle, Bureau staff told Full Circle it needed to have both funeral establishment and funeral director licenses, and the Bureau needed to "inspect" their operation and "examine" their fees. Defs.' Response to Pls.' SUMF ¶ 67 (citing Murphy Decl. ¶¶ 144–145 and Decl. of Donna Peizer ¶¶ 109–110, ECF No. 35-5).[8] On December 24, 2019, Deputy Bureau Chief Sandra Patterson issued an affirmance in Bureau Chief Sanchez's name, confirming the Bureau's initial determination. *Id.* ¶ 71 (citing Murphy Decl. Ex. G). While Bureau Chief Sanchez had not participated in the interceding informal meeting, the affirmance stated "nothing" in Full Circle's "rebuttal provides any reason or belief that the findings of the investigation or the citation were incorrect in their facts." *Id*. The Bureau did not identify the precise offending speech or conduct in the initial citation, at the informal hearing, or in its December 24 affirmation. Murphy Decl. Exs. F & G. Following the informal hearing, Full Circle modified language on its website, changing "assists with arranging options for burial or cremation" to "offer[s] guidance in arranging options . . . ." *Id.* Ex. D; Murphy Resp. Decl. ¶¶ 16–17, ECF No. 41-2. Likewise, Full Circle revised the wording "assists [families with preparing or filling paperwork]" to read "[s]upport[s] families in filling out and obtaining legal and other necessary paperwork (death certificate, permit for disposition and cremation authorization . . .)." *Id.*

In mid-2020, Full Circle and family plaintiffs filed this suit asserting two as-applied First Amendment challenges and one as-applied Fourteenth Amendment challenge to the Bureau's

[8] Defendants dispute plaintiffs' recollection, arguing, "to the extent that they occurred," the statements "are not accurate and taken out of context." *Id.* However, defendants go on to say, "Licensure is required when businesses, such as Full Circle, engage in activities described in Business and Professions Code sections 7615 [defining licensed funeral director] and 7616 [defining licensed funeral establishment]. And licensed facilities are subject to inspection and document reviews." *Id.* Based on defendants' clarification, the court has no reason to doubt the veracity of plaintiffs' statement, though the court does not rely here on plaintiffs' recollection of the precise words exchanged.

enforcement of California's funeral statutes and regulations. *See generally* Compl. Plaintiffs base their First Amendment claims on the Bureau's regulation of both Full Circle's individualized advice and advertisements. *Id.* Plaintiffs seek declaratory and injunctive relief constraining the Bureau's future application of the Cemetery and Funeral Act and related regulations, as well as its policies and practices, to the extent they abridge plaintiffs' freedom of speech, both commercial and noncommercial, and due-process rights. *Id.* ¶ 4. Plaintiffs also moved for a preliminary injunction barring the Bureau "from preventing Plaintiffs from exercising, during the pendency of this litigation, their First Amendment rights to give and receive individualized advice, as well as their rights to engage in and receive commercial speech." Mot. for Prelim. Inj. at 25, ECF No. 12-1. The Bureau opposed plaintiffs' motion and moved to dismiss the complaint. *See generally* Mot. to Dismiss (MTD), ECF No. 13; Opp'n Prelim. Inj., ECF No. 16. In late December 2020, the court denied the motion to dismiss and granted plaintiffs' motion for a preliminary injunction. *See generally* Prev. Order (Dec. 29, 2020), ECF No. 23.

**D. Enforcement Actions Following the Preliminary Injunction**

In early 2021, Bureau Chief Sanchez sent Full Circle a letter stating: "I have determined that the [c]itation was issued in error without a complete and adequate investigation of all the relevant factual circumstances." Defs.' Response to Pls.' SUMF ¶¶ 84–85 (citing Murphy Decl. Ex. H). Bureau Chief Sanchez also noted the Bureau staff who "offered their opinions or recommendations relating to [Full Circle's] activities" at the December 2019 informal meeting were not authorized to do so. Murphy Decl. Ex. H. She continued:

> The Bureau issued a formal citation here, but the scope of the Bureau's investigation was limited to website advertising, and the Bureau did not investigate any scope of practice issues relating to conduct as a funeral director, funeral establishment, or other Bureau licensee. To that end, the Bureau acknowledges that the Order of Abatement directing Full Circle to "immediately discontinue advertising and operating as a funeral establishment," was incorrect and did not warrant the issuance of the [c]itation. The Bureau had not yet conducted a complete and adequate investigation sufficient to establish that Full Circle's advertising or activities violated the

> Cemetery and Funeral Act or required a license at the time of the informal conference, or any time thereafter. Thus, the Bureau prematurely issued the [c]itation against Full Circle.

*Id*. She also pointed to the "law applicable to the licensing of funeral establishments and handling of decedents," including provisions of the Business and Professions Code defining funeral director and funeral establishment, Bus. & Prof. Code §§ 7615–7636, relating to funeral practices, *id.* §§ 7685–7685.6, and relating to preneed funeral arrangements, *id.* §§ 7735–7746; Division 7 of the California Health and Safety Code, which provides general requirements relating to dead bodies; and Title 16 of the California Code of Regulations, Divisions 12 and 23, which both cover the Cemetery and Funeral Bureau. *Id.*

The Bureau now explains the citation was "procedurally defective" for two reasons. Sanchez Decl. ¶ 27; Defs.' Cross Mot. Summ. J. (MSJ) at 10, ECF No. 34-1. First, the citation did not identify Business and Professions Code section 7616,[9] the "specific statute that Full Circle violated by its unlicensed activity." Sanchez Decl. ¶ 27. Second, the citation directed Full Circle to "discontinue advertising and operating as a funeral establishment" even though the Bureau "did not investigate [their] operations," and thus "inclusion of the word 'operating' was incorrect." *Id*. The Bureau "does not intend to issue a replacement or amended citation for the unlicensed activity identified in its 2019 investigation." Sanchez Decl. ¶ 27. The Bureau also notes it "has no enforcement actions pending or planned against Full Circle or any of the Plaintiffs." *Id.* ¶ 28. However, the Bureau's statements, including those made during this litigation, suggest it believes Full Circle and its doulas are violating section 1246 by (1) providing

[9] The court notes section 7616(a)(1)–(2) defines licensed funeral establishment. The Bureau's reference may have been intended to focus on subsection (c), which provides as follows—with two exceptions not applicable to Full Circle—: "no person shall operate or maintain or hold himself or herself out as operating or maintaining any of the facilities specified in paragraph (2) of subdivision (a), unless he or she is licensed as a funeral director." Bus. & Prof. Code § 7616(c). As discussed above, paragraph (2) of subdivision (a) describes "[a] preparation room equipped . . . for the preparation, sanitation, or embalming of human remains for burial or transportation." *Id.* § 7616(a)(2). However, nothing in the record suggests Full Circle has ever maintained or advertised maintaining a room for embalming human remains. Given defendant's arguments and the record, the court construes the Bureau's position as arguing Full Circle violated section 1246 by advertising as a funeral establishment without a license.

their services, i.e., individualized end-of-life planning advice and guidance and hands-on assistance at home funerals, and (2) advertising those services, because both activities suggest Full Circle doulas are licensed funeral directors and Full Circle itself is a licensed funeral establishment. Defs.' Response to Pls.' SUMF ¶ 86 (citing Murphy Decl. Ex. H; Rowes Decl. Ex. F, Sanchez Dep. (July 29, 2021), ECF No. 35-10). Furthermore, the Bureau never told Glenn Miller, the employee who investigated Full Circle and concluded it was engaging in unlicensed activity, it had withdrawn the citation because his investigation was flawed. Defs.' Response to Pls.' SUMF ¶¶ 44, 89. Miller stands by the conclusions in his original investigation report. *Id.* ¶ 90.

As noted, the parties have filed cross-motions for summary judgment. *See generally* Defs.' Cross MSJ; Pls.' Cross MSJ, ECF No. 35-1. Defendants first argue plaintiffs lack standing and plaintiffs' claims are not ripe. Defs.' Cross MSJ at 25. Defendants also argue they are entitled to judgment on both speech claims, and that the due process claim "fails as a matter of law." Defs.' Cross MSJ at 13, 14, 23. Finally, defendants argue sovereign immunity bars plaintiffs' claims as to Secretary Lourdes M. Castro Ramirez. *Id.* at 26. Plaintiffs disagree and argue they are entitled to judgment on both their speech claims (counts one and two) and due process claim (count three). Pls.' Cross MSJ at 12, 19. Plaintiffs also a seek a permanent injunction. *Id.* at 23.

On February 11, 2022, the court heard arguments on the cross-motions, with Ben Field, Derek Mayor, and Jeffrey Rowe appearing for plaintiffs and Julianne Mossler appearing for defendants. John Kappos and Gabe Castillo also appeared for amicus.

## II. DISCUSSION

The court first addresses justiciability and whether Secretary Castro Ramirez is immune from plaintiffs' claims before turning to the merits of the cross-motions for summary judgment, as well as the relief warranted.

### A. Justiciability

The court previously found Full Circle had sufficiently alleged standing to challenge the citation and seek a preliminary injunction and likewise found Full Circle's claims ripe. *See* Prev.

Order (Dec. 29, 2020) at 4–6. Having withdrawn the citation, the Bureau now argues summary judgment is appropriate because plaintiffs lack standing, pointing to their inability to "show a past injury" and "vague fears about the possibility of a future enforcement action . . . ." Defs.' Cross MSJ at 25 (citing *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)). Similarly, the Bureau argues plaintiffs' claims are unripe because their "as-applied challenge depends on their unsupported speculation about 'fluid and future facts,' . . . ." *Id.* (quoting *Hoye v. City of Oakland*, 653 F.3d 835, 859 (9th Cir. 2011)). Plaintiffs disagree, arguing they can still meet the requirements of standing, and their claims are ripe for judicial review.

**1. Legal Standard**

Standing and ripeness are "related doctrines of justiciability . . . originating in the case-or-controversy requirement of Article III . . . ." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation omitted). The plaintiff must demonstrate the injury is not "conjectural or hypothetical." *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (quotations omitted). By the same token, a case is constitutionally "ripe" if it is "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump*, 141 S. Ct. at 535 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128 n.8 (2007) ("standing and ripeness [may] boil down to the same question . . ."). "In suits seeking both declaratory and injunctive relief against a defendant's continuing practices, the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).

"When evaluating whether a claimed threat of prosecution is genuine [for the purposes of imminent-harm and ripeness], [courts] consider: (1) whether the plaintiff has articulated a concrete plan to violate the law in question; (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) the history of past

prosecution or enforcement under the challenged statute." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010). The Supreme Court has "permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), including where plaintiffs have "an actual and well-founded fear that the law will be enforced against them," *id.* at 160 (quoting *Virginia v. American Booksellers Assn. Inc.*, 484 U.S. 383, 393 (1988)).

"A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citing *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006)). "The plaintiff also bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "While '[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice,' in responding to a summary judgment motion, 'the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'" *Id.* (citation and quotes omitted). "A plaintiff's basis for standing must affirmatively appear in the record." *Salmon Spawning & Recovery All. v. Gutierrez,* 545 F.3d 1220, 1228 n.5 (9th Cir. 2008) (citation and quotes omitted).

**2. Full Circle Has Standing and Its Claims Are Ripe**

While the Bureau has withdrawn the citation and Bureau Chief Sanchez declares the Bureau "does not intend to issue a replacement or amended citation," Sanchez Decl. ¶ 27, the court finds Full Circle's "claimed threat of prosecution" for its hands-on assistance at home funerals, individualized advice, and advertisements remains "genuine." *Wolfson*, 616 F.3d at 1058. First, Full Circle confirms it intends to continue advertising and operating in substantially the same way it did prior to receiving the citation. *See generally* Murphy Decl. The record also suggests the Bureau has not "disavow[ed]" the possibility of issuing another citation. *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) ("the government's failure to *disavow* enforcement of the law . . . weigh[s] in favor of standing.") (emphasis in original, citing *Cal. Trucking Ass'n v.*

*Bonta*, 996 F.3d 644, 653 (9th Cir. 2021)). Nor has the Bureau concluded Full Circle and its doulas are not engaging in unlicensed activity under section 1246. Defs.' Response to Pls.' SUMF ¶ 86 (citing Sanchez Dep. (July 29, 2021)). Indeed, Bureau Chief Sanchez has clarified the Bureau's view that bathing, dressing, and repositioning human remains "are all activities related to the preparation of human remains for transportation, burial, or disposal," and thus "require licensure [as a funeral director] under the Act if performed by a business for a customer." Sanchez Decl. ¶¶ 30–31 (citing Bus. & Prof. Code § 7615).

The Bureau also maintains the "evidence shows [it] acted lawfully when it issued the [c]itation," Defs.' Reply at 13, because Full Circle was engaged in "unlicensed activity" by advertising as a funeral establishment, Sanchez Decl. ¶ 27 (citing Bus. & Prof. Code § 7615). Likewise, Mr. Miller, the Bureau employee whose investigation and report led to the citation, stands by his original conclusions, Defs.' Response to Pls.' SUMF ¶ 90 (citing Miller Dep.), and the Bureau did not tell him his investigation was flawed, *id.* ¶ 89. Furthermore, while the Bureau argues it "does not regulate the kind of pre-planning that Full Circle describes in this case" unless Full Circle "accepts pre-payment for future funeral services as part of its pre-planning advice services," Defs.' Reply at 6, the record as a whole casts doubt on this assertion. *See, e.g.*, Sanchez Decl. ¶ 15 ("providing oversight and guidance related to conducting memorial services, funeral processes, lying in honor or other ceremonies, and 'after death care'" are "services [that] require licensure under the Act if performed by a business for a consumer"); Defs.' Cross MSJ at 8 ("organizing and supervising death-related ceremonies" require licensure); *id.* at 9–10 ("supervision and direction related to conducting memorial services, funeral processes, lying in honor or other ceremonies and 'after death care'"). Finally, Ms. Murphy has declared, "[t]he Withdrawal does not ameliorate any of my concerns that led me to file this lawsuit . . . [and] provides no assurance that the Bureau will not take future enforcement action against Full Circle . . . ." Murphy Decl. ¶¶ 156–157.

Considering the undisputed facts, and taking Ms. Murphy's affidavit as "true," *Lujan*, 504 U.S. at 561, the court finds Full Circle has "demonstrated a sufficient likelihood of injury," *Hodgers-Durgin*, 199 F.3d at 1044, to support its seeking injunctive relief on all three claims.

For the same reasons, the court also finds Full Circle has established a "likelihood of future injury" rendering its request for declaratory relief constitutionally ripe. *Id.*[10] The court is not persuaded otherwise by the Bureau's citation to three cases to support its argument Full Circle has not met standing's injury requirement and their claims are not ripe. The court addresses each case in turn.

First, the Bureau cites the Ninth Circuit's decision in *San Diego Gun Rights Committee v. Reno* for the proposition that where, as here, plaintiffs seek only declaratory and injunctive relief, they must also "show a very significant threat of future harm; it is insufficient for them to demonstrate only a past injury." 98 F.3d at 1126 (citing cases). While an accurate statement of law, the Bureau's citation is unavailing because the case is easily distinguished on the facts. In *San Diego Gun Rights Committee*, plaintiffs challenged the constitutionality of a law prohibiting the manufacture, transfer, or possession of certain assault weapons. *Id.* at 1124. Plaintiffs argued the "threat of being prosecuted under the [law]" sufficed to meet standing's injury requirement. *Id.* at 1126. The Ninth Circuit found plaintiffs could not assert standing on this basis because they did not specify what activities they intended to engage in, nor point to any specific threat of prosecution or past enforcement actions. *Id.* at 1126–28. Here, Full Circle and its doulas intend

[10] Having met the requirements to show Article III injury, it is not clear the court need determine whether the "prudential ripeness" factors of "fitness" and "hardship" are satisfied. *Bishop Paiute Tribe v. Inyo Cnty*., 863 F.3d 1144, 1154 (9th Cir. 2017) ("Prudential considerations of ripeness are discretionary."); *see also Susan B. Anthony List*, 573 U.S. at 167 ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." (internal quotations and citations omitted)); *see also Trump*, 141 S. Ct. at 532–37 (analyzing ripeness, but not prudential ripeness factors of fitness and hardship). Nonetheless, the court notes these two factors are easily met, as no further factual development is required to decide this issue, *Wolfson*, 616 F.3d at 1060, *see also Friedman Bros. Inv. Co. v. Lewis,* 676 F.2d 1317, 1319 (9th Cir. 1982). Furthermore, denying judicial review would impose a hardship on Full Circle, forcing them to choose between performing and speaking about their work on the one hand, or engaging in that practice and speech and risking another citation or fine on the other. *Susan B. Anthony List*, 573 U.S. at 167–68; *see also Wolfson*, 616 F.3d at 1059 ("self-censorship" is "constitutionally-recognized injury").

to provide end-of-life services the Bureau has characterized as "unlicensed activity" and Full Circle has identified more than "a general threat made against them" for previously engaging in those activities. *Id.* at 1127–28. Accordingly, plaintiffs meet standing's injury requirement under *San Diego Gun Rights Committee*.

The Bureau also cites *Hoye v. City of Oakland*, 653 F.3d at 835, for the proposition that the Ninth Circuit has "declined to entertain as-applied challenges that would require [it] to speculate as to prospective facts," because such challenges are not yet ripe. Defs.' Cross MSJ at 26 (quoting *Hoye*, 653 F.3d at 859). As with *San Diego Gun Rights Committee*, *Hoye* is easily distinguished on the facts. Plaintiff in *Hoye* sought to counsel women seeking abortions, but his efforts were stymied by both (1) a city ordinance making it an offense to "knowingly and willfully" approach individuals seeking entry into clinics if one's purpose was to engage in protest, counseling, or various other forms of speech with that individual, and (2) escorts intent on drowning out his speech by making noises. *Hoye*, 653 F.3d at 839, 841. Because the court could not "determine on the present record" whether plaintiff could show that the Ordinance's requirement, rather than the escorts' noisemaking, deprived him of "ample alternative means of communication," it declined to entertain plaintiff's as-applied challenge. *Id.* at 859. The court continued, "[e]ven if the application of the Ordinance has in the past deprived [plaintiff] of ample channels of communication, that defect may be cured if [the city] begins to enforce the Ordinance in an evenhanded manner," so plaintiff's challenge depends "on fluid and future facts." *Id*. *Hoye* is distinguishable, because here the record is clear the Bureau's refusal to disavow the citation is the only factor restricting Full Circle's speech, and the Bureau's enforcement plans vis-à-vis other establishments in the "death care industry" would not change the fact the Bureau claims Full Circle is engaged in "unlicensed activity." Sanchez Decl. ¶ 27.

Third, the Bureau points to *Hodgers-Durgin* and cautions the court against running afoul of the "principles of federalism" by "enjoining the activities of a state agency based on an isolated claim of constitutional harm that is not likely to recur." Defs.' Cross MSJ at 26 (citing *Hodgers-Durgin*, 199 F.3d at 1041–42). However, the *Hodgers-Durgin* court clarified federalism was a concern in that case only because plaintiffs did not establish a likelihood of injury. *Hodgers-*

*Durgin*, 199 F.3d at 1044 ("In the absence of a likelihood of injury to the named plaintiffs, there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch."). As already explained, the Bureau's statements and actions suggest Full Circle has no reasonable assurance it would not be cited or subjected to future enforcement actions. On this record the court cannot conclude the harm is not likely to take place again.

To have Article III standing, Full Circle must also show the harm is "traceable" to the Bureau's enforcement actions and "redressable" by the court's ruling. *Clapper*, 568 U.S. at 409. As it did at the motion to dismiss stage, Full Circle easily meets these two additional requirements: The asserted injuries flow from the Bureau's imminent enforcement actions based on section 1246; obtaining declaratory relief and a permanent injunction in this court would redress those injuries. Because the court finds Full Circle has Article III standing to assert the due process claim and two free speech claims, the court does not consider the standing of the family plaintiffs to assert their two overlapping claims. *Poder in Action v. City of Phoenix*, No. 20-01429, 2020 WL 7245072 (D. Ariz. Dec. 9, 2020) ("The Ninth Circuit has repeatedly stated that it is unnecessary to address the standing of each plaintiff in a multi-plaintiff case, at least where all plaintiffs seek the same form of relief, so long as one of the plaintiffs has standing.") (collecting cases).

Finally, the court briefly addresses an element of justiciability not raised by either party: mootness. *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir. 1986) ("Although the parties did not raise the issue . . . mootness is an element of justiciability and raises a question as to our jurisdiction, [so] we consider the matter *sua sponte*."). "A case, or an issue in a case, is considered moot if it has lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 853–54 (9th Cir. 1985) (quotations and citations omitted). Here, the Bureau does not argue the case is mooted by its withdrawal of the citation, as it would be if the Bureau both recognized the citation was in error and had no intention of engaging in any future

enforcement action against Full Circle. Instead, the Bureau sends mixed messages by withdrawing the citation while in the same breath arguing it was issued "lawfully." Defs.' Reply at 13. Moreover, it is settled law that "voluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted)). Here, the case is not moot as the record demonstrates the Bureau could "not carr[y] the 'heavy burden' of making 'absolutely clear'" it "could not" issue another citation. *Id.*

For the reasons discussed above, the court finds the case justiciable and **denies** the Bureau's motion for summary judgment on these grounds.

**B. Secretary Castro Ramirez Does Not Have Sovereign Immunity**

Defendant Secretary Castro Ramirez is the Secretary of the California Business, Consumer Services, and Housing Agency. The Bureau argues the Eleventh Amendment bars plaintiffs' claims against Secretary Castro Ramirez and moves to dismiss those claims. Defs.' Cross MSJ at 26–27. Specifically, the Bureau argues the Secretary "lacks the requisite connection to the enforcement of the statute at issue to permit Plaintiffs to bring suit against her under *Ex parte Young*." *Id.* at 27 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

"Under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Community. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (Eleventh Amendment proscribes suit against state agencies "regardless of the nature of the relief sought")). Because plaintiffs sue Secretary Castro Ramirez in her official capacity as the leader of the Business, Consumer Services, and Housing Agency, their suit is not against her as an individual but against her office, which is "no different" from a suit against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, the Eleventh Amendment bars the suit unless the *Ex parte Young* exception applies. *See* 209 U.S. at 155–56.

The *Ex parte Young* doctrine provides a narrow exception to the Eleventh Amendment immunity when, as here, plaintiffs seek "prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. at 155–56; *Alden v. Maine*, 527 U.S. 706, 747 (1999)); *see* Compl. at 29. For the exception to apply the "officer must have some connection with the enforcement of the act . . . ." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quoting *Ex parte Young*, 209 U.S. at 157). "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citation omitted).

While Secretary Castro Ramirez does not "directly implement or enforce the Cemetery and Funeral Act," her Agency oversees the Department of Consumer Affairs. Pls.' Response to Defs.' SUMF ¶ 39. Under California Government Code section 12804, the secretary "shall hold the head of each department, office, or other unit responsible for management control over the administrative, fiscal, and program performance of his or her department, office, or other unit." Cal. Gov't Code § 12800(b). Accordingly, Secretary Castro Ramirez has authority over defendant Kimberly Kirchmeyer, who directs the Department of Consumer Affairs, *id.* § 12804, which houses the Cemetery and Funeral Bureau, Bus. & Prof. Code § 101(p). The Bureau has not identified, and the court has not found, any case law in which an agency secretary was held immune under similar circumstances. This is unsurprising, because secretary-level officials have the statutory authority to direct subordinates to comply with their orders. Because plaintiffs have requested only prospective declaratory and injunctive relief against Secretary Castro Ramirez and there is a "fairly direct" connection between her and the violation, the Eleventh Amendment does not bar suit. *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704.

### C. Summary Judgment and Permanent Injunctions

The court thus turns to the merits, having found no barrier to doing so. Both sets of parties move for summary judgment on three claims: First, plaintiffs' claimed violation of their

due process right to provide and receive hands-on support at home funerals; second, the claimed violation of their First Amendment right to give and receive individualized advice, both for free and for a fee; and third, the claimed violation of Full Circle's First Amendment right to advertise its end-of-life services. *See generally* Pls.' Cross MSJ; Defs.' Cross MSJ.[11] Because Full Circle's arguments for summary judgment on these three claims directly challenge the Bureaus' arguments, and vice versa, the court addresses the claims together. Where applicable, the court also addresses whether a permanent injunction is warranted based on the current record.

**1. Cross-Motions for Summary Judgment**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Cross-motions for summary judgment are evaluated separately under the same standard, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. C.L. Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

---

[11] For the reasons discussed below, the court addresses the speech Full Circle gives for a fee along with Full Circle's advertisements, as both are commercial speech.

**2. Permanent Injunctions**

To obtain a permanent injunction, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). This standard mirrors the standard for a preliminary injunction, except that a plaintiff must show success on the merits, not just likelihood of success. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

**D. Due Process: Full Circle's Hands-On Services**

The court addresses plaintiffs' Fourteenth Amendment due process claim first because its resolution informs that of plaintiffs' First Amendment advertisement claim. Full Circle and family plaintiffs argue the Bureau's application of the Act violates their liberty interests to the extent it prohibits them from providing and receiving in-person and hands-on assistance at home funerals. Compl. ¶¶ 252, 259.

**1. Legal Standard**

"To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008); *see also Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir.2007). "The touchstone of due process is protection of the individual against arbitrary action of government." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Both parties agree no fundamental liberty interest is at stake here, so rational basis is the appropriate standard of review. *See* Pls.' Opp'n at 12, ECF No. 41; Mot. Hr'g Tr., ECF No. 52.

Under rational basis review, plaintiffs face the onerous task of showing the Bureau's enforcement actions were constitutionally arbitrary, i.e., egregious conduct "lacking any reasonable justification in the service of a legitimate governmental objective . . . ." *Shanks*,

540 F.3d at 1088 (internal citation, quotation marks omitted); *see also Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007) (recognizing substantive due process claim must be based on clearly arbitrary actions, having no substantial relation to public health, safety or general welfare). The court will "accept 'generalizations even when there is an imperfect fit between means and ends.'" *United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir. 2015) (*quoting Heller v. Doe ex rel. Doe*, 509 U.S. 312, 321 (1993)). Put differently, the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 681 (2012) (internal quotation marks, citation, and brackets omitted).

**2. Analysis**

Full Circle challenges the Bureau's conclusion that Full Circle acts as funeral directors[12] and a funeral establishment,[13] and thus is engaged in unlicensed activity, *see* Cal. Code Regs. tit. 16, § 1246, by providing hands-on assistance at home funerals. Because the definitions and requirements of funeral directors and funeral establishments are distinct and may serve as independent grounds for citation, the court analyzes each separately. The "hands-on assistance" is limited to washing, dressing, repositioning, and placing a cooling mechanism (e.g., dry ice), around a body, as well as procuring cooling mechanisms for families of the deceased. *See* Defs.' Response to Pls.' SUMF ¶ 25 (hands-on assistance may include "relocating the deceased within the home, washing and dressing the body, and placing dry ice around the body for temporary preservation." (citing Murphy Decl.)); *id.* ¶ 26 (discussing procurement of cooling mechanisms); Sanchez Decl. ¶¶ 30–31 ("washing . . . dressing . . . and repositioning a body are all activities related to the preparation of human remains for transportation, burial, or disposal," and thus require a funeral director license "if performed by a business for a customer." (citing Bus. & Prof.

[12] In using the term "funeral director(s)," the court is referring specifically to "licensed funeral director" as defined in Business and Professions Code section 7615.

[13] "[F]uneral establishment(s)" refers specifically to "licensed funeral establishment" as defined in Business and Professions Code section 7616.

Code § 7615(a)).[14] Accordingly, the relevant question is whether the Bureau has a legitimate interest in citing unlicensed funeral directors and funeral establishments, and whether citing Full Circle and its doulas for providing these hands-on services is rationally related to that interest.

The Cemetery and Funeral Bureau has an indisputably legitimate interest in citing unlicensed funeral directors and funeral establishments. The state's legislature gave the Bureau authority to administer and enforce the Cemetery and Funeral Act, *see* Bus. & Prof. Code § 7606, which defines both funeral directors and funeral establishments, *see id*. §§ 7615, 7616. Likewise, the legislature has declared, "Unlicensed activity in the professions and vocations regulated by the Department of Consumer Affairs is a threat to the health, welfare, and safety of the people of the State of California." *Id.* § 145(a). So, the legislature authorized the Bureau to issue citations "against unlicensed persons . . . or other organizations who engage in any activity including advertising for which licensure by the bureau is required." Cal. Code Regs. tit. 16, § 1246. This comports with the legislature's command that the "[p]rotection of the public shall be the highest priority . . . for the [Bureau]." Bus. & Prof. Code § 7601.1. The Bureau specifically cites

[14] Bureau Director Sanchez's declaration also mentions "bathing," "shrouding," and "casketing" as activities that require licensure. Sanchez Decl. ¶ 31. The court understands "bathing" to be the functional equivalent of "washing" and "shrouding" to be the functional equivalent of "dressing," so it does not separately consider those two activities. Full Circle disputes assisting with casketing human remains or advertising as much. Pls.' Response to Defs.' SUMF ¶ 24 (citing Murphy Decl.). "Casketing" is defined as "to enclose in a case, chest, or coffin." *See* American Heritage Dictionary of the English Language, Fifth Edition (2011). The Bureau withdrew the citation in part because it "did not [actually] investigate Full Circle's operations," Sanchez Decl. ¶ 27, only its advertisements. Mr. Miller's report on Full Circle's advertisements found Full Circle advertised it would assist in procuring a cardboard casket, which is the only apparent basis for his conclusion that Full Circle casketed bodies. *See generally* Decl. of Glenn Miller (Miller Decl.) Ex. A, ECF No. 34-5. Accordingly, because the Bureau cites nothing in the record that would permit the court to reasonably infer Full Circle engaged or engages in casketing, the court does not consider casketing in analyzing Full Circle's due process claim.

The Bureau's motions also indicate it has concluded the procurement and placement of cooling mechanisms require a funeral director license. Defs.' Reply at 11; Defs.' Cross MSJ at 16. Finally, the Bureau's motions indicate Full Circle doulas must also maintain a licensed funeral establishment to provide their services. Defs.' Cross MSJ at 16.

"[d]ecomposing human remains" as presenting "a threat to public health, safety, and welfare." Defs.' Opp'n. at 8, 24 (citing Defs.' Suppl. SUMF, ECF No. 42-2[15]).

The Bureau also aims to protect "consumers from being financially victimized by unscrupulous persons at what is often a highly emotional and vulnerable time." Defs.' Cross MSJ at 8. Plaintiffs agree protecting consumers and public health and safety are legitimate governmental interests. Pls.' Cross MSJ at 19–20, 22; Pls.' Opp'n at 13. And plaintiffs have "no qualm with sensible regulation [of] the sensitive duties of mortuaries, embalmers, and crematories." Pls.' Opp'n at 15–16.

The court thus turns to whether the Bureau's reservation of its right to cite Full Circle and its doulas for unlicensed activity—specifically, acting as a funeral establishment and funeral directors by providing hands-on services—is rationally related to the state's legitimate interests in consumer protection and public health, safety, and welfare.

**a) Funeral Establishment Licensure**

*1. Plaintiffs' Motion*

The court first addresses plaintiffs' motion as it relates to Full Circle's purportedly unlicensed activity as a funeral establishment. Because Full Circle has "no physical location," plaintiffs argue it would be "irrational" to conclude Full Circle is acting as or must be licensed as "a place of business conducted in a building . . . devoted exclusively to those activities . . . related to . . . disposition of human remains and including" either a "suitable room for the storage of human remains" or a "preparation room equipped" to prepare, sanitize, or embalm human remains for burial or transportation. Pls.' Cross MSJ at 21; Bus. & Prof. Code § 7616.

The Bureau has not advanced any arguments as to why Full Circle's hands-on services warrant treating it as a funeral establishment. Recognizing it is not the Bureau's burden to do so, the undisputed facts of record support plaintiffs' argument. First, Full Circle only provides its hands-on services in private homes and has never maintained a building exclusively for activities

[15] Plaintiffs did not respond to this supplemental statement of undisputed material facts, which defendants submitted with their opposition to plaintiffs' cross-motion for summary judgment.

related to storing or disposing of human remains. Requiring Full Circle to maintain a funeral establishment would not protect the relevant class of consumers, as consumers of home funeral services want funerals at home. Second, none of Full Circle's hands-on, home funeral services would be made safer by having a building in which to conduct these services and a room to store or prepare human remains. These spaces would, presumably, sit unused and empty, because using them would run counter to Full Circle's core mission of supporting home funerals. In short, it would be irrational for the Bureau to conclude citing Full Circle for not being a licensed funeral establishment would advance health, safety, or consumer protection. *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1106 (S.D. Cal. 1999) ("There are limits to what the State may require before its dictates are deemed arbitrary and irrational.").

The court thus **grants plaintiffs' cross-motion for summary judgment** on their Due Process claim, as it relates to the Bureau's conclusion that Full Circle must obtain a funeral establishment license to provide hands-on services. The Bureau's cross-motion on this issue thus is moot. The court also finds a permanent injunction appropriate as a matter of law, given that Full Circle indisputably has been injured by its inability to provide hands-on services, other remedies available at law are inadequate compensation, the Bureau will suffer no hardship by not citing Full Circle, and the public interest will not be disserved by Full Circle's providing hands-on services without a funeral establishment license. *See eBay Inc.*, 547 U.S. at 391 (listing factors). Accordingly, the court **enjoins defendants** from citing Full Circle under section 1246, on the grounds it is acting as an unlicensed funeral establishment by providing hands-on services. Likewise, the court **enjoins defendants** from enforcing Business and Professions Code section 7619.3, which bars funeral directors from performing their duties unless employed by or working as sole proprietor of a licensed funeral establishment, against Full Circle's doulas, to the extent the Bureau would require the doulas to be employed by or operate a funeral establishment.[16]

[16] Business and Professions Code section 7619.3 effectively requires a funeral director to affiliate with a funeral establishment, which would be irrational as applied to Full Circle's doulas, if they are required to become funeral directors. Because enjoining enforcement of section 7619.3 against Full Circle effectively untethers the definitions of funeral director and funeral establishment, the court must also consider whether the enjoined provisions of the Act are severable, i.e., whether the court can sever the provisions requiring Full Circle to become a

**b) Funeral Director Licensure**

*1. Plaintiffs' Motion*

The court next addresses plaintiffs' argument that summary judgment is appropriate on their due process claim because the Bureau cannot rationally conclude Full Circle doulas are acting as unlicensed funeral directors—and thereby putting consumers and public health and safety at risk—by providing hands-on services. Again, plaintiffs agree public health, safety, and consumer protection are legitimate interests. *See generally* Pls.' Cross MSJ. However, plaintiffs argue the Bureau's licensure requirement for the doulas is "*unrelated* to [the Bureau's legitimate] interests" and thus "lacks a rational basis." Pls.' Cross MSJ at 20 (quoting *Merrifield v. Lockyer*, 547 F.3d 978, 986 (9th Cir. 2008) (emphasis in original)).

First, plaintiffs argue the Bureau's consumer protection argument fails because the undisputed facts show the doulas are being "swept into a comprehensive" and "overbroad" licensing scheme, which suffices to refute the state's generalized consumer protection justifications. *Id.* at 20–21 (citing *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013)). Plaintiffs' citation to *St. Joseph Abbey* is unavailing. In that case, monks selling caskets challenged Louisiana's requirement that only licensed funeral directors and establishments make intrastate casket sales. 712 F.3d at 218. The state's "sole regulation" of caskets was to "restrict their intrastate sales to funeral homes," and there were "no other strictures over their quality or use." *Id*. The state argued the law was "rationally related to consumer protection because it

licensed funeral establishment while allowing the Bureau to enforce provisions requiring its doulas to become licensed funeral directors. The Act does not contain a severability clause. *See generally* Bus. & Prof. Code § 7600 *et seq*. However, the Supreme Court of California has held in the absence of a severability clause, a court may sever the invalid portions of a statute if the invalid provisions are "grammatically, functionally, and volitionally separable." *California Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 271 (2011) (internal quotes and cites omitted). Put differently, can the invalid parts be removed without affecting the "coherence of what remains," is the remainder of the statute "complete in itself," and would the remaining provisions have been adopted by the legislature if it had "foreseen the partial invalidation of the statute"? *Id.* (internal quotes and cites omitted). Here, the court finds the definition and requirements of a licensed funeral director and a funeral establishment are not dependent clauses, the remaining provisions are "complete" as applied to Full Circle and its doulas, and the legislature would have an interest in regulating Full Circle doulas as funeral directors, even if unaffiliated with funeral establishments.

restricts predatory sales practices by third-party sellers and protects consumers from purchasing a casket that is not suitable for the given burial space." *Id.* at 223.

The Fifth Circuit first observed that "[n]o provision mandates licensure requirements for casket retailers," rather, "the licensure requirements . . . create funeral industry control over intrastate casket sales" via the state's "interlocking definitions of 'funeral establishment' and 'funeral directing' . . . ." *Id*. at 223. In Louisiana, a "funeral establishment" includes an "office or place for the practice of funeral directing," and "funeral directing" includes the "retail sale and display" of caskets. *Id.* at 223–24 (quoting La. Stat. Ann. §§ 37:831(39), 37:831(37)). Accordingly, anyone selling caskets in Louisiana must become a licensed funeral director and establishment. The district court found the mandated funeral director training "does not include instruction on caskets," Louisiana does not require a person be buried in a casket or restrict sales from out of state, and "whatever special expertise a funeral director may have in casket selection is irrelevant to it being the sole seller of caskets," because funeral directors are contractually bound to assist customers with casket selection, regardless of where a casket is purchased. *Id.* at 224–25. The appellate court also concluded the law was not rationally related to policing deceptive sales tactics, citing the Federal Trade Commission's (FTC) enactment of the Funeral Rule,[17] under which the FTC declined to extend the rule to third-party sellers of caskets and urns. *Id.* at 225–26. The Fifth Circuit concluded the "undisputed facts" betrayed the "perfectly rational statement of hypothesized footings for the challenged law." *Id.* at 223.

Contrary to plaintiffs' argument, what happened in *St. Joseph Abbey* is not "exactly what is happening here." Pls.' Cross MSJ at 21. Unlike monks selling caskets but otherwise uninvolved in funerals, the doulas are not engaging in a discrete activity merely tangential to the funeral industry. Instead, the definition of "funeral director" in California encompasses those who prepare for the transportation or burial of human remains, i.e., what the Bureau has determined Full Circle doulas do in providing hands-on services. *See* Bus. & Prof. Code

[17] "Beginning in the early 1980s, the FTC promulgated . . . the Funeral Rule, to mitigate unfair or deceptive practices of funeral providers." *Id.* at 218 (citing Trade Regulation Rule; Funeral Industry Practices, 47 Fed. Reg. 42260 (Sept. 24, 1982); *see* 16 C.F.R. § 453.1 *et seq.*).

§ 7615(a). And even assuming it is irrational for a funeral director to be tethered to a funeral establishment, *see supra* at footnote 18 (discussing Bus. & Prof. Code § 7613),[18] the court is enjoining the Bureau from enforcing that provision to the extent it would otherwise require Full Circle or its doulas to open or affiliate with a funeral establishment. Accordingly, the court cannot find as a matter of law the separate funeral director licensing scheme is irrationally overbroad as applied to Full Circle's doulas.

Further distinguishing this case from *St. Joseph Abbey*, there is a rational connection between consumer protection and citing Full Circle's doulas for providing hands-on services without a funeral director license. Full Circle's doulas provide hands-on services in a home, for a suggested donation, and over many hours or days. The Bureau has expressed concerns about the "risk presented by unscrupulous businesses and people who would take advantage of vulnerable consumers struggling with the loss of a loved one." Sanchez Decl. ¶ 7. The court observes at least part of the Funeral Director Written Examination, *see supra* note 2, covers consumer disclosures relating to prices for funeral services. Assuming these disclosures increase transparency, learning about and implementing price disclosures would protect consumers. Finally, while plaintiffs are correct that California does not regulate home funerals, just as Louisiana did not regulate caskets, Pls.' Cross MSJ at 22, the state may rationally regulate intimate services provided by third parties for a fee. *See, e.g., IDK, Inc., v. Clark Cnty.*, 836 F.2d 1185, 1193 (9th Cir. 1988) (relationship between paid escort and client is not intimate relationship protected by substantive due process). Here, plaintiffs' complaint emphasizes the "free" nature of Full Circle's home funeral services. Compl. ¶¶ 255–57, 259–61. The record shows doulas have provided some services for free. Defs.' Response to Pls.' SUMF ¶ 32. At

[18] The court also observes that standing alone, California's definitions of funeral establishment and funeral director are not necessarily interlocking. A funeral director may be engaged in maintaining a funeral establishment, Bus. & Prof. Code § 7615(b), or may be engaged in "[p]reparing for the transportation or burial or disposal, or directing and supervising for transportation or burial or disposal of human remains," *id.* § 7615(a), or may be using a title implying she is engaged as a funeral director, *id.* § 7615(c). Likewise, nothing in the definition of "licensed funeral establishment" requires the involvement of a licensed funeral director, unless the funeral establishment has a room for preparing human remains, *id.* § 7616(c), in lieu of a storage room.

hearing, defense counsel conceded there was no evidence doulas received an income for their services. Hr'g Tr. (Feb. 11, 2022) at 8–9, ECF No. 52. However, Full Circle suggests a donation of between $500 and $2,000 for both individualized guidance and hands-on services, Defs.' Response to Pls.' SUMF 31, and plaintiffs' counsel confirmed Full Circle's doulas request a "donation based on ability to pay" for their hands-on services, Hr'g Tr. (Feb. 11, 2022) at 7. At hearing, plaintiffs' counsel also suggested the nature of the relationship between doula and client—whether commercial or not, as discussed in *IDK, Inc., v. Clark County*—was irrelevant, arguing the proper inquiry is whether "where the state is imposing [a] completely onerous regulatory requirement that would put the doulas out of business, is it rational for them to do that?" Hr'g Tr. (Feb. 11, 2022) at 17. Because plaintiffs argue the analysis and outcome should be the same regardless of whether Full Circle's doulas are in a commercial relationship with families—and drawing all inferences in favor of the non-moving party—the court considers the issue as though Full Circle and its doulas' conduct is commercial. Accordingly, the court cannot conclude as matter of law it is irrational for the Bureau to cite Full Circle's doulas for engaging in unlicensed activity as funeral directors, with the legitimate goal of protecting consumers. If at trial the "commercial" nature of the relationship will be dispositive to the outcome, the court will permit supplemental briefing on the issue.

Plaintiffs also argue *St. Joseph Abbey*'s reasoning vis-à-vis the state's interest in health and safety applies here. Pls.' Cross MSJ at 22–23. The Fifth Circuit concluded "no rational relationship exists between public health and safety and limiting intrastate sales of caskets to funeral establishments" because the state does "not even require a casket for burial, does not impose requirements for their construction or design, does not require a casket to be sealed before burial, and does not require funeral directors to have any special expertise in caskets . . . ." *St. Joseph Abbey*, 712 F.3d at 226. The court was not required "to accept nonsensical explanations" even given the "deference due state economic regulation . . . ." *Id.*

Here, Full Circle argues there are similarly "no rules or standards about health and safety for a home funeral,"[19] so "it cannot rationally be the case that health-and-safety considerations arise when families invite doulas into their home to help." Pls.' Cross MSJ at 23. But the Fifth Circuit's logic, grounded in the facts of that case, does not translate to the facts of this one. For one, this case concerns the handling of human remains, which the Bureau avers presents a risk to public health and safety, Defs.' Suppl. SUMF ¶ 40; human remains are fundamentally different from inert wooden caskets. And while the Bureau does not regulate family members' washing, dressing, repositioning, or placing dry ice around the bodies of the deceased, family relatives are less likely than doulas to be in regular contact with human remains. Because the doulas are regularly in contact with human remains and because those remains implicate public health concerns, it is rational for the Bureau to treat them differently than close relatives attending to a home funeral. The court cannot find as a matter of law it is irrational for the Bureau to determine Full Circle's doulas are acting as funeral directors and to require them to become licensed funeral directors in order to protect public health and safety.

For these reasons, the court **denies plaintiffs' motion for summary judgment** to the extent it seeks to enjoin the Bureau from citing Full Circle's doulas for acting as unlicensed funeral directors by providing its hands-on services.

*2. Defendants' Motion*

The court next addresses defendants' motion for summary judgment as it relates to Full Circle doulas' hands-on services and the requirement they become licensed funeral directors. The Bureau initially advanced largely conclusory arguments in support of its entitlement to summary judgment on plaintiffs' due process claim. Defs.' Cross-MSJ at 23–25 (California "is permitted to regulate professional conduct within its borders . . . particularly [] when the practice at issue implicates public health and safety." (citing cases); "Plaintiffs have no due process right to engage in . . . activities for which a license . . . is required.").

[19] Without addressing this aspect of plaintiff's argument in full, the court notes California law requires that remains be interred or cremated within a "reasonable" time, which is arguably a rule relating to the health and safety of home funerals. Cal. Health and Safety Code § 7103(a).

In addressing health and safety, the Bureau observed the "reasons" for various, unspecified "requirements" imposed on licensed funeral establishments—not directors—are "self-evident." *Id.* at 20. The Bureau continued, "[s]pecial care should be taken to manage infection risks when handling the deceased, including [certain infectious disease] . . . ." *Id.* However, the Bureau did not articulate how citing Full Circle's doulas for acting as unlicensed funeral directors in providing hands-on services at a private home protected the public or consumers' health and safety. *See generally* Defs.' Cross-MSJ. The Bureau also argued in its opposition, "Decomposing human remains can present a threat to public health, safety, and welfare." Defs.' Opp'n at 24. And in its reply, the Bureau argued, "[I]n conceding that they handle human remains without having the training and qualifications required by the Act, [p]laintiffs have already admitted that Full Circle [doulas] perform services that compromise consumer protection and public health and safety." Defs.' Reply at 5.

But the Bureau never connects the dots by explaining how becoming licensed funeral directors would ensure the doulas' hands-on services are not detrimental to health and safety. For example, at hearing, the Bureau could not identify any topics on the funeral director's examination[20] that doulas must master to attend to public health and safety when, for example, repositioning human remains. Hr'g Tr. at 9–10. Instead, the Bureau replied generally that anyone handling human remains "should be cognizant of any sort of health and safety concerns," and "as cognizant of these concerns as licensed funeral director would be." *Id.* at 10. But health and safety concerns provide the state's legitimate interest; they do not satisfy the requirement of a rational relationship, i.e., how doulas licensed as funeral directors would advance the state interest, or how unlicensed doulas would undermine it. *See Merrifield*, 547 F.3d at 986 (discussing validity of state training requirements and noting "any qualification must have a rational connection with the applicant's fitness or capacity to practice [the profession]" (quoting *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957)); *see also Cornwell*, 80 F. Supp. 2d at

[20] The Bureau mentions this examination only once in its briefing, to distinguish this case from *St. Joseph Abbey*. Defs.' Opp'n at 24. The Bureau does not explain the content of the examination, except that it "tests the applicant's knowledge of the Act." *Id.*

1108 (finding cosmetology "licensing regimen would be irrational as applied to [hair braider] because of her limited range of activities" relative to activities of cosmetologist).

Furthermore, families are required to comply with various rules that appear designed to ensure the human remains in question are safe to wash, dress, reposition, and cool. For example, a coroner or attending physician must sign a death certificate, which presumably requires an evaluation of the body. *See* State of California Dept. of Consumer Affairs Consumer Guide to Funeral & Cemetery Purchases at 7. Families must obtain a permit for disposition, make arrangements with a cemetery or crematory, *id.*, and inter bodies "within a reasonable time," Cal. Health & Safety Code § 7103(a), all of which reduce the likelihood of remains decomposing to a point they pose a hazard to health. The Bureau does not attempt to explain how licensing a doula who provides hands-on services is necessary or even beneficial given the existing requirements imposed on home funerals.

The Bureau's arguments regarding consumer financial protection are equally conclusory. The Bureau notes "consumers are particularly vulnerable to manipulation and overreaching when they are struggling with the impending or recent death of a loved one" and observes the Act "requires that licensees comply with various fiscal provisions intended for consumer protection, such as trust accounts, specific contract requirements, and published price lists." Defs.' Cross-MSJ at 20–21. Again, the Bureau does not explain how consumer finances are protected by citing Full Circle, a non-profit organization funded largely by donations, for not complying with these requirements before providing hands-on services.

Finally, relying on the evidence in the record, nothing indicates Full Circle's doulas' hands-on services have harmed public or consumer health, safety, or finances, or that the existing requirements imposed on home funerals are insufficient. At this stage, the court cannot find as a matter of law that the Bureau has articulated a "rational relation" between its legitimate interest in health, safety, and consumer protection, and applying the funeral director licensure scheme to the doulas for providing their hands-on services. *Cornwell*, 80 F. Supp. 2d at 1106 ("There must be some congruity between the means employed and the stated end or the test would be a nullity.") The court thus **denies defendants' motion for summary judgment on plaintiffs' due process**

**claim** to the extent the Bureau seeks to cite Full Circle's doulas for acting as unlicensed funeral directors by providing hands-on services.

**E. First Amendment: Full Circle's Free Individualized Advice**

Full Circle's second and third claims are based on the First Amendment. Plaintiffs first argue the First Amendment protects Full Circle's right to offer speech in the form of individualized advice, as well as the right of their clients to receive that advice, whether Full Circle collects a fee or not. Compl. ¶¶ 227–28. This advice consists of devising personalized written plans before death and providing individualized advice during a home funeral. Next, plaintiffs argue the First Amendment protects Full Circle's right to advertise its nonprofit services, i.e., engage in commercial speech. *Id.* ¶ 239. As explained in a separate section below, both the individualized advice Full Circle offers or provides for a fee and its advertisements are subject to the same analysis and warrant the same relief. *See discussion infra* at F.1–2. For example, if the court finds summary judgment is appropriate on Full Circle's First Amendment claim as it applies to advertising pre-planning services, it would find the same with regard to Full Circle providing those pre-planning services for a fee. Accordingly, the court addresses the speech Full Circle provides for a fee in its discussion of Full Circle's advertisements, *infra* at F., and only addresses speech offered and provided for free here.

**1. Legal Standard**

When a government places limits on speech protected by the First Amendment, the restrictions must survive "more exacting or 'heightened' scrutiny" in the form of either intermediate or strict scrutiny. *Pac. Coast Horseshoeing School, Inc. v. Kirchmeyer*, 961 F.3d 1062, 1068 (9th Cir. 2020) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997)). The court engages in intermediate scrutiny when the government "regulates conduct but incidentally burdens expression," while it applies strict scrutiny when the government "regulates the content of the speech—when the government regulates who may speak or what we may say . . . ." *Id.* (also citing *Reed v. Town of Gilbert*, 576 U.S. 155, 135 (2015)).

Intermediate scrutiny requires a government defendant to show that the challenged law or regulation "advances important governmental interests unrelated to the suppression of free speech

and does not burden substantially more speech than necessary to further those interests." *Turner Broad. Sys., Inc.*, 520 U.S. at 189. Strict scrutiny requires the regulating statute to "be narrowly tailored to promote a compelling Government interest." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) (citing *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)). Under strict scrutiny, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Id.* (citing *Reno v. Am. C.L. Union*, 521 U.S. 844, 874 (1997)).

**2. Analysis**

Plaintiffs' free advice includes devising personalized written plans for people before their deaths and providing individualized advice in someone's home while a home funeral is underway. The Bureau argues neither strict nor intermediate scrutiny are relevant to the court's analysis of this non-commercial speech, because the Bureau has "taken no action to restrict plaintiffs' pure speech." Defs.' Cross MSJ at 13. For the same reasons plaintiffs have standing to bring this First Amendment claim, *see* discussion *supra* at II.A.2, the court considers the cross-motions on this claim.

Full Circle argues the appropriate level of scrutiny is strict scrutiny. *See* Pls.' Cross MSJ at 13. Because the Bureau disputes it has infringed Full Circle's free speech at all, it does not articulate the governmental interests it would advance in citing Full Circle for giving free advice or guidance without funeral establishment or funeral director licenses. Defs.' Cross MSJ at 13–14; Defs.' Reply at 10. Despite the conflicting messages the Bureau has sent about whether Full Circle's non-commercial speech requires licensure, *see* discussion *supra* at II.A.2, it effectively concedes in its moving papers that it has no important or compelling interest in regulating that speech. Defs.' Cross MSJ at 13–14; Defs.' Reply at 10.

Accordingly, the court **grants plaintiffs' motion on this claim** and **permanently enjoins** the Bureau from citing Full Circle for providing any free guidance or advice without a funeral establishment or director license, whether before or during a home funeral. Full Circle has demonstrated injury by virtue of its speech having been chilled, *see Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("a chilling of the exercise of First

Amendment rights is, itself, a constitutionally sufficient injury"), monetary damages are an insufficient remedy, the Bureau faces no hardship in being enjoined from citing Full Circle, and the public is not harmed by Full Circle's free speech. *See eBay Inc.*, 547 U.S. at 391 (listing factors).

**F. First Amendment: Full Circle's Advertisements and Commercial Speech**

The court turns last to Full Circle's commercial speech, which includes both advertisements and the guidance Full Circle offers or provides for a fee.

**1. Legal Stanadard**

Under *Central Hudson Gas & Electric v. Public Service Commission of New York*, the government may restrict commercial speech "that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 755 (9th Cir. 2019) (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980)). If the regulated speech is not related to unlawful activity or misleading, "the government bears the burden of showing that it has a substantial interest, that the restriction directly advances that interest and that the restriction is not more extensive than necessary to serve the interest." *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 816 (9th Cir. 2013) (citations omitted). This showing is "critical; otherwise, 'a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.'" *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield v. Fane*, 507 U.S. 761, 771 (1993)). "If the Government can achieve its interests in a manner that does not restrict commercial speech, or that restricts less speech, the Government must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 358 (2002). "It is well established that 'the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Edenfield*, 507 U.S. at 770 (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983)).

**2. Analysis**

For clarity, the court addresses each of the following areas of commercial speech separately: (a) speech relating to Full Circle's hands-on services at home funerals; (b) individualized consultations to develop end-of-life plans before death; (c) public education about end-of-life planning and options; (d) acting as a liaison to arrange transportation of human remains after the home funeral; (e) speech regarding services requiring licensure the Bureau avers Full Circle advertises, but Full Circle disputes advertising or providing; (f) use of the term "home funeral guide"; and (g) the website's funeral establishment disclaimers. Where applicable, the court considers separately the interests the Bureau may have in citing Full Circle for acting without funeral establishment as contrasted to funeral director licenses, because these interests provide independent grounds for citation.

**a) Full Circle's Speech Relating to Hands-On Services**

The Bureau argues Full Circle's speech relating to its hands-on services is not protected speech because Full Circle may not legally provide those services. Defs.' Cross MSJ at 15–17.

This court above has found plaintiffs' motion for summary judgment should be granted on their Due Process claim because the Bureau has no rational basis for requiring Full Circle to obtain funeral establishment licensure to provide hands-on services. *See* discussion *supra* at II.D.2.a.1.. Put differently, the court has found as a matter of law and on the undisputed factual record that Full Circle may provide hands-on services without a funeral establishment license; this ends the analysis under *Central Hudson*. 447 U.S. at 564. However, even if this speech were "related to unlawful activity," the Bureau's inability to articulate a rational connection between citing Full Circle for providing hands on services and public health and safety concerns indicates the Bureau likewise does not have a "substantial interest" in restricting related speech unless Full Circle becomes a licensed funeral establishment, as it is not required to do. *See Valle Del Sol Inc.*, 709 F.3d at 816. Thus, the court **grants plaintiffs' motion for summary judgment on this aspect of their First Amendment claim**, to the extent the Bureau seeks to cite Full Circle or its doulas for advertising, speaking about, or directing hands-on services without a funeral establishment license. For the same reasons, the court **permanently enjoins** the Bureau from

citing Full Circle on these grounds, *see* Cal. Code Regs. tit. 15, § 1246, or enforcing Business and Professions Code section 7619.3 against Full Circle's doulas, to the extent it would require them to be employed by or operate a funeral establishment. A permanent injunction is appropriate because Full Circle's speech has been chilled, money damages are an inadequate remedy, the Bureau faces no privation in being enjoined from citing Full Circle, and the public is not harmed by this category of Full Circle's speech. *See eBay Inc.*, 547 U.S. at 391 (listing factors). Where the court grants summary judgment for plaintiffs on their commercial speech claim, the court also finds a permanent injunction appropriate for these same reasons, so it does not repeat the analysis set forth above or restate the factors.

Likewise, this court has already denied plaintiffs' and the Bureau's cross-motions for summary judgment on plaintiffs' due process claim, *see supra* at II.D.2.b., as applicable to the Bureau's ability to cite Full Circle's doulas for providing hands-on services without a funeral director license. In other words, the court does not as a matter of law find Full Circle's hands-on services are permissible or lawful. Accordingly, the court also **denies both plaintiffs' and the Bureau's cross-motions on plaintiffs' First Amendment claim**, with respect to the question regarding the Bureau's ability to cite Full Circle for advertising its hands-on services or offering guidance about how families themselves may perform those same services for a fee, without a funeral director license.

**b) Individualized End-Of-Life Plans**

Based on its moving papers, the Bureau does not object to Full Circle's "providing individualized advice about death planning and home funerals" without a funeral establishment or director license, Defs.' Opp'n at 10–12, so long as Full Circle does not solicit or accept funds intended to pre-pay for funeral services in the future, Defs.' Reply at 10. Nothing in the record indicates Full Circle accepts or advertises accepting pre-payment for future funeral services. Accordingly, the Bureau effectively concedes it has no interest, substantial or otherwise, in citing Full Circle for providing end-of-life plans for a fee. The court finds **summary judgment for plaintiffs appropriate on this aspect of plaintiffs' First Amendment claim**, and **permanently**

**enjoins** the Bureau from citing Full Circle for selling or advertising individualized end-of-life plans without funeral director or establishment licenses. *See* Cal. Code Regs. tit. 15, § 1246.

**c) Public Education About End-of-Life Planning**

As with individualized end-of-life plans, the Bureau does not argue it has any interest in requiring Full Circle to obtain funeral director or establishment licenses before educating the public about end-of-life planning, even for a fee, so long as Full Circle does not collect funds intended to pay for a future funeral. Defs.' Cross-MSJ at 10–11, 13, 22; Defs.' Opp'n at 12, 18. Thus, the court also **grants summary judgment for plaintiffs on this aspect of their First Amendment claim**, and **permanently enjoins** the Bureau from citing Full Circle for selling or advertising educational events about end-of-life planning without funeral director or establishment licenses. *See* Cal. Code Regs. tit. 15, § 1246.

**d) Acting as a Liaison to Arrange Transportation**

Full Circle does not dispute its doulas act as liaisons to arrange transportation of human remains after a funeral. Pls.' Response to Defs.' SUMF ¶ 33. The Bureau argues the First Amendment does not protect Full Circle's right to engage in speech uttered in fulfilling this role because Full Circle and its doulas are engaging in unlicensed activity requiring funeral director licensure. Defs.' Cross MSJ at 8–10, 16; Defs.' Opp'n at 15 (citing Bus. & Prof. Code § 7615(a)). Plaintiffs do not contest the Bureau's conclusion that this liaison function requires licensure under the Act. *See generally* Pls.' Cross MSJ, Opp'n, and Reply. Because plaintiffs do not contest the speech is related to an unlawful activity, **summary judgment is granted in favor of defendants on this aspect of plaintiffs' First Amendment claim**. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 497 (1996) ("[T]he First Amendment does not protect commercial speech about unlawful activities.").

**e) Speech Full Circle Disputes Making**

Defendants aver Full Circle advertises the following services, all of which require licensure under the Act: casketing, assistance with arranging options for burial or cremation, and assistance with preparing or filling out paperwork. Defs.' Cross MSJ at 8–9, 16; Defs.' Opp'n at 15. Full Circle disputes it advertises or provides these services, pointing in part to revisions it

made to its website that more specifically and accurately describe its services, following the Bureau's citation. *See* Pls.' Response to Defs.' ¶¶ SUMF 24, 28–29, 33. Full Circle does not dispute these services, in the abstract, require licensure, so the question is whether there is a dispute of material fact regarding whether Full Circle actually provides or advertises these services, as described by the Bureau.

As discussed above, "casketing" is defined as "to enclose in a case, chest, or coffin." American Heritage Dictionary of the English Language, Fifth Edition (2011). Full Circle disputes providing or advertising this service, but admits it offers guidance and information about low-cost casket options, and about decorating caskets. Defs.' Response to Pls.' SUMF ¶ 9; Pls.' Response to Defs.' SUMF ¶ 24. Full Circle's website did not include the term "casketing" when the Bureau initially investigated Full Circle's advertisements, *see* Miller Decl., Ex. A, and the term does not appear on Full Circle's website as of this order's date, *see generally* Full Circle Website.[21] According to Mr. Miller's investigative report, Full Circle's website mentioned the word "casket" in four contexts in 2019. Miller Decl., Ex. A. First, Full Circle may "[a]ssist in procuring . . . cardboard casket . . . ." *Id.* Second and third, Full Circle notes that optional additional services available upon request include "[p]ersonalized guided Casket decorating . . ." and "Local handmade wood casket." *Id.* Finally, Full Circle wrote, "Family Directed End-of-Life and After Death Care Includes: . . . Eco-Friendly, low cost casket." *Id.* However, none of these statements indicates Full Circle participates in the enclosing of human bodies in a casket, as discussed separately above.

Full Circle also disputes advertising "services like assistance with arranging options for burial or cremation." Pls.' Response to Defs.' SUMF ¶ 28. Shortly after meeting with Bureau representatives, Full Circle removed the "assists" language from its website and replaced it with "offer[s] guidance." *Id.*; *see also* Full Circle Website.[22] Likewise, Full Circle no longer advertises that it "assists" with "preparing/filling out paperwork," but rather "[s]upport[s] families

---

[21] Available at http://www.fullcirclelivingdyingcollective.com/ (last accessed Jan. 22, 2023).

[22] Available at http://www.fullcirclelivingdyingcollective.com/ (last accessed, Jan. 22, 2023).

in filling out and obtaining legal and other necessary paperwork . . . ." *Id.* ¶ 24. The Bureau does not dispute these changes track what Full Circle does or argue this new language amounts to holding oneself out as acting as an unlicensed funeral establishment or funeral director.

Because there is no dispute of material fact regarding whether Full Circle engages in casketing, "assists" in arranging options for burial or cremation, or "assists" in preparing paperwork, the court **grants summary judgment for plaintiffs on this aspect of their First Amendment claim**. Accordingly, the court **permanently enjoins** the Bureau from citing Full Circle for using language about caskets and the aforementioned, revised language on its website without obtaining funeral director or establishment licenses. *See* Cal. Code Regs. tit. 15, § 1246.

**f) Full Circle's Use of "Home Funeral Guide"**

The Bureau argues referring to Full Circle doulas as "home funeral guides" could "mislead consumers into believing that Full Circle's doulas are licensed funeral directors" because "funeral director" includes anyone "[u]sing . . . any [ ] title implying that he or she is engaged as a funeral director." Defs.' Cross MSJ at 18 (quoting Bus. & Prof. Code § 7615(c)). Whether or not the title "home funeral guide" accurately characterizes the work Full Circle's doulas perform, the court finds a consumer could conclude it implies the doulas are licensed funeral directors. But to restrict Full Circle's use of this title, the Bureau must still show it has a substantial interest in restricting the speech, the "restriction directly advances that interest," and it is "not more extensive than necessary to serve the interest." *Valle Del Sol Inc.*, 709 F.3d at 816. The Bureau does not articulate any interest in this respect, *see generally* Defs.' Cross MSJ, so the court **grants summary judgment for plaintiffs on this aspect of their First Amendment claim** and **permanently enjoins** the Bureau from citing Full Circle's doulas for using the title "home funeral guide." *See* Cal. Code Regs. tit. 15, § 1246.

**g) Full Circle's Funeral Establishment Disclaimers**

Finally, the Bureau argues the First Amendment does not protect Full Circle's advertising because it is misleading. Defs.' Cross MSJ at 17–18. Specifically, the Bureau argues the prominent disclaimers on Full Circle's website "could actually create confusion and increase risk to consumers who may believe that they do not need the protections of a licensed funeral

professional and may be discouraged from reporting Full Circle's unlicensed activities to the Bureau." *Id.* at 18 (e.g., pointing to language saying "Full Circle . . . is in no way considered a funeral establishment."). The argument that disclaimers may "create confusion" strains credulity, and the Bureau does not attempt to explain how or why exactly a disclaimer would create confusion and be misleading. The argument also assumes consumers should believe they "need the protections of a licensed funeral professional," which is irrelevant here. *Id.* The court **grants summary judgment for plaintiffs on this aspect of their First Amendment claim**, and **permanently enjoins** the Bureau from citing Full Circle for including funeral establishment disclaimers on their website. *See* Cal. Code Regs. tit. 15, § 1246.

## III. CONCLUSION

For the above reasons, the court **grants plaintiffs' motion for summary judgment in part and denies it in part**, and **grants defendants' cross-motion in part and denies it in part**. The Bureau is permanently enjoined from citing Full Circle pursuant to section 1246, *see* Cal. Code Regs. tit. 15, § 1246:

- on the grounds they are acting as an unlicensed funeral establishment by providing hands-on services, or enforcing Business and Professions Code section 7619.3 against Full Circle's doulas, to the extent it would require the doulas to be employed by or operate as sole proprietors of a funeral establishment to provide hands-on services;
- for providing any free guidance or advice without a funeral establishment or director license, whether before or during a home funeral;
- for advertising, speaking about, or directing hands-on services without a funeral establishment license, or enforcing Business and Professions Code section 7619.3 against Full Circle's doulas, to the extent it would require them to be employed by or run a funeral establishment in order to do the same;
- for selling or advertising individualized end-of-life plans without funeral director or establishment licenses;
- for selling or advertising educational events about end-of-life planning without funeral director or establishment licenses;

- for using language relating to caskets, but not casketing, on its website without funeral director or funeral establishment licenses;
- for using the revised language described *supra* at II.F.2.e without funeral director or funeral establishment licenses;
- for using the term "home funeral guide" without a funeral director or funeral establishment license; or
- for including funeral establishment disclaimers on its website without funeral director or funeral establishment licenses.

The parties are ordered to **meet and confer and submit a joint proposed formal permanent injunction order within fourteen (14) days** of the filed date of this order. The court's preliminary injunction remains in full effect as to all issues not resolved at this stage. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties until a trial on the merits can be held."); *see also U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093–94 (9th Cir. 2010) (preliminary injunctions are dissolved when final judgment issued in case).

This order resolves ECF Nos 34 and 35.

IT IS SO ORDERED.

DATED: January 23, 2023.

CHIEF UNITED STATES DISTRICT JUDGE